# In re Fernando Alfonso TORRES-VARELA, Respondent

## File A29 242 698 - Florence

*Decided May 9, 2001*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Under Arizona law, the offense of aggravated driving under the influence ("DUI") with two or more prior DUI convictions is not a crime involving moral turpitude. *Matter of Lopez-Meza*, Interim Decision 3423 (BIA 1999), distinguished.

FOR RESPONDENT: Roger C. Wolf, Esquire, Tucson, Arizona

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Virginia A. Vasquez, Assistant District Counsel

BEFORE: Board En Banc:  DUNNE, Vice Chairman; SCHMIDT, HOLMES, HURWITZ, VILLAGELIU, FILPPU, GUENDELSBERGER, MATHON, MOSCATO, MILLER, BRENNAN, ESPENOZA, and OSUNA, Board Members.  Concurring Opinion:  ROSENBERG, Board Member.  Dissenting Opinions:  HEILMAN, Board Member; COLE, Board Member, joined by SCIALABBA, Acting Chairman; JONES and GRANT, Board Members.[1]

OSUNA, Board Member:

In a decision dated February 23, 2000, an Immigration Judge found the respondent to be removable as an alien convicted of an aggravated felony under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. V 1999).  However, he granted the respondent's applications for a waiver under section 212(h) of the Act, 8 U.S.C. § 1182(h) (Supp. V 1999), and for adjustment of status under section 245(a) of the Act, 8 U.S.C. § 1255(a) (1994).  The Immigration and Naturalization Service appealed the Immigration Judge's decision.  The issue raised by the Service is whether the respondent's conviction for aggravated driving under the influence ("DUI") in violation of Arizona law is a crime involving moral turpitude.  We find that it is not.  The Service's appeal will be dismissed.

---

[1]  Board Member Kevin A. Ohlson did not participate in the decision in this case.

## I.  FACTS AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who adjusted his status to that of a lawful permanent resident on February 1, 1993.  On January 31, 1995, the respondent was convicted of three counts of DUI, for offenses committed from September to November 1994.  On March 27, 1998, the respondent was convicted of aggravated DUI with two or more prior DUI convictions, in violation of sections 28-692(A)(1) and 28-697(A)(2), (D), (F), (H)(1), (I), and (J) of the Arizona Revised Statutes, and he was sentenced to a term of imprisonment of 1½ years.[2]

On March 2, 1999, the Service issued a Notice to Appear (Form I-862) charging the respondent with removability under section 237(a)(2)(A)(iii) of the Act for having been convicted of an aggravated felony pursuant to section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. V 1999).  Specifically, the Service charged that the respondent's aggravated DUI offense constituted a "crime of violence" as defined in section 101(a)(43)(F).

Before the Immigration Judge, the respondent conceded the charge of removability set forth in the Notice to Appear.  However, he requested an opportunity to file an application for adjustment of status, because he was the beneficiary of an approved Petition for Alien Relative (Form I-130) filed by his United States citizen wife.  The Service moved to pretermit the adjustment application, arguing that the respondent's conviction for aggravated DUI with two or more prior DUI convictions constituted a conviction for a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (Supp. V 1999), rendering the respondent inadmissible to the United States and ineligible for adjustment of status.  The Service relied on our holding in *Matter of Lopez-Meza*, Interim Decision 3423 (BIA 1999), that a conviction for aggravated DUI after the defendant's license had been suspended or revoked was a conviction for a crime involving moral turpitude.

The Immigration Judge disagreed with the Service, distinguished *Matter of Lopez-Meza*, *supra*, and found that the respondent's conviction for aggravated DUI was not a conviction for a crime involving moral turpitude.  The Immigration Judge granted the respondent's request for a waiver under section 212(h) of the Act and granted his application for adjustment of status.  The Service's appeal followed.

---

[2]   Section 28-692 of the Arizona Revised Statutes was renumbered as section 28-1381. 1996 Ariz. Sess. Laws ch. 76, § 3, *as amended by* 1997 Ariz. Sess. Laws ch. 1, § 106 (effective Oct. 1, 1997).  Section 28-697 was renumbered as section 28-1383 and amended. 1996 Ariz. Sess. Laws ch. 76, §§ 3, 25, *as amended by* 1997 Ariz. Sess. Laws ch. 1, § 108 (effective Oct. 1, 1997); 1997 Ariz. Sess. Laws ch. 220, § 82.

## II.  EFFECTS OF THE RESPONDENT'S DUI CONVICTION

Although the Immigration Judge found that the respondent's conviction for aggravated DUI under sections 28-692(A)(1) and 28-697(A)(2) of the Arizona Revised Statutes renders him removable as charged, as an alien convicted of an aggravated felony, that issue is not before us on appeal.  Accordingly, we will only consider here whether the respondent's conviction is for a crime involving moral turpitude.

The respondent applied for adjustment of status based on an approved visa petition filed on his behalf by his wife.  An alien's status may be adjusted to that of a lawful permanent resident under section 245(a) of the Act if:  (1) the alien makes an application for such adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (3) an immigrant visa is immediately available to the alien at the time his or her application is filed.  Section 245(a) of the Act.  In the proceedings below, the respondent submitted an application for adjustment of status and, pursuant to the approved immediate relative visa petition, has an immigrant visa immediately available to him.  The Immigration Judge found that the respondent met the requirements for adjustment of status and granted his application for such relief.[3]

The Service does not contest on appeal that the respondent has met two of the requirements for adjustment of status, in that he has submitted an application for relief and has demonstrated that an immigrant visa is immediately available to him.  The more difficult issue is whether the respondent is admissible to the United States as an immigrant.  In essence, we must decide whether the respondent's DUI conviction is for a crime involving moral turpitude, which would render him inadmissible. We note that the respondent's conviction for an aggravated felony does not, by itself, render him inadmissible to the United States.  A conviction for an aggravated felony constitutes a ground of removability, but not a ground of inadmissibility.  *Compare* section 212(a) of the Act *with* section 237(a) of the Act.  We also note that the Service, other than asserting that the respondent is inadmissible as an alien convicted of a crime involving moral turpitude, did not challenge his eligibility for adjustment of status as a matter of fact or law, or in the exercise of discretion, either during the hearing below or on appeal.  Therefore, the sole remaining issue on appeal in determining whether the respondent was properly granted adjustment of status

---

[3]    Because the Immigration Judge found that the respondent was an aggravated felon, the Immigration Judge erred in granting the respondent a waiver of inadmissibility under section 212(h) of the Act.  An alien who has previously been admitted to the United States as a lawful permanent resident and has been convicted of an aggravated felony is ineligible for section 212(h) relief.  As noted herein, however, the Immigration Judge's action was harmless error for purposes of this case.

is whether he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence.

## A. Relevant State Statutes

The respondent was convicted under section 28-692(A)(1) and sections 28-697(A)(2), (D), (F), (H)(1), (I), and (J) of the Arizona Revised Statutes. The first three statutory sections provide as follows:

> § 28-692. Driving or in actual physical control while under the influence of intoxicating liquor or drugs; violation; classification; definition
>
> A. It is unlawful for any person to drive or be in actual physical control of any vehicle within this state under any of the following circumstances:
>> 1. While under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs or vapor releasing substances if the person is impaired to the slightest degree.
>
> § 28-697. Aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs; violation; classification; penalties; notice; definition
>
> A. A person is guilty of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs if the person does either of the following:
>> . . . .
>> 2. Commits a third or subsequent violation of § 28-692 or this section or is convicted of a violation of § 28-692 or this section and has previously been convicted of any combination of convictions of § 28-692 or this section or acts in another state, a court of the United States or a tribal court which if committed in this state would be a violation of § 28-692 or this section within a period of sixty months . . . .
>> . . . .
> D. Aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs committed under:
>> 1. Subsection A, paragraph 1 or 2 of this section is a class 4 felony.

Ariz. Rev. Stat. Ann. §§ 28-692(A)(1), 28-697(A)(2), (D) (1997).

In addition, section 28-697(F) of the Arizona Revised Statutes provides that an individual convicted under section 28-697(A)(2) is not eligible for probation, pardon, commutation, or suspension of sentence, or release until the person has served at least 4 months in prison. Section 28-697(H)(1) mandates alcohol and drug screening and education, or treatment, for persons convicted and allows the court to order additional sanctions against individuals who fail to comply. Section 28-697(I) states that the time an individual spends in custody pursuant to subsections (E), (F), (G), or (H) shall not be counted toward the sentence imposed if probation is revoked and the person is sentenced to prison following revocation of probation. Finally, section 28-697(J) mandates that the court

order the surrender of the person's driver's license and the revocation of his or her driving privileges for 3 years.

## B. Arguments on Appeal

In arguing that the respondent's aggravated DUI conviction is for a crime involving moral turpitude, the Service relies on our decision in *Matter of Lopez-Meza*, *supra*. The Immigration Judge considered this case and determined that it was not controlling, because the alien in *Lopez-Meza* was convicted of aggravated DUI under section 28-697(A)(1) of the Arizona Revised Statutes, whereas the respondent's conviction in the present case was under section 28-697(A)(2). Section 28-697(A)(1) provides that a person is guilty of aggravated driving under the influence if he or she "[c]ommits a violation of § 28-692 or this section while the person's driver's license or privilege to drive is suspended, cancelled, revoked or refused, or the person's driver's license or privilege to drive is restricted as a result of violating § 28-692 or under § 28-694." In determining that a violation of section 28-697(A)(1) was a crime involving moral turpitude, we found it significant that the defendant knowingly drove while intoxicated, knowing that his license was suspended or revoked. *See Matter of Lopez-Meza*, *supra*.

The Service argues on appeal that, like a conviction under section 28-697(A)(1), the respondent's conviction under section 28-697(A)(2), which was for aggravated DUI based upon his having multiple prior convictions for DUI, constitutes a conviction for a crime involving moral turpitude. According to the Service, because the respondent had previously been convicted of driving under the influence, he was "unquestionably put on notice that he was prohibited from driving while under the influence of an intoxicating substance." The Service asserts that such notice is akin to the knowledge of wrongdoing found in *Matter of Lopez-Meza*, which is controlling because the respondent drove under the influence, knowing that he was absolutely prohibited from driving.

The respondent contends that there is no knowledge requirement for a violation of section 28-697(A)(2). He notes further that our decision in *Matter of Lopez-Meza* specifically provides that a simple DUI offense under Arizona law, without more, does not constitute a crime involving moral turpitude. On this basis, the respondent argues that to find his offense a crime involving moral turpitude would require us to conclude that repeated offenses, although not individually crimes involving moral turpitude, can, in the aggregate, be converted into morally turpitudinous conduct.

## C. Crimes Involving Moral Turpitude

The meaning of the phrase "crime involving moral turpitude" is a matter of federal law, and any analysis of whether a crime involves moral turpitude

necessarily entails agency and judicial construction. *Matter of Lopez-Meza*, *supra*. The term "moral turpitude" has long been the subject of interpretation, and its precise meaning has never been fully settled. *See Jordan v. De George*, 341 U.S. 223, 229 (1951). We have held that moral turpitude refers generally to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. *Matter of L-V-C-*, Interim Decision 3382 (BIA 1999); *Matter of Tran*, 21 I&N Dec. 291 (BIA 1996); *Matter of Danesh*, 19 I&N Dec. 669 (BIA 1988); *see also Rodriguez-Herrera v. INS*, 52 F.3d 238 (9th Cir. 1995); *Grageda v. INS*, 12 F.3d 919, 921 (9th Cir. 1993) (noting that courts have described moral turpitude in general terms as "an 'act of baseness or depravity contrary to accepted moral standards'" (quoting *Guerrero de Nodahl v. INS*, 407 F.2d 1405, 1406 (9th Cir. 1969)), and as "'basically offensive to American ethics and accepted moral standards'" (quoting *Castle v. INS*, 541 F.2d 1064, 1066 (4th Cir. 1976))). Under this standard, the nature of a crime is measured against contemporary moral standards and may be susceptible to change based on the prevailing views in society. *See generally United States v. Francioso*, 164 F.2d 163 (2d Cir. 1947); *Ng Sui Wing v. United States*, 46 F.2d 755 (7th Cir. 1931); *Matter of G-*, 1 I&N Dec. 59, 60 (BIA 1941) (stating that the standard by which an offense is to be judged is "that prevailing in the United States as a whole, regarding the common view of our people concerning its moral character").

Furthermore, although crimes involving moral turpitude often involve an evil intent, such a specific intent is not a prerequisite to finding that a crime involves moral turpitude. *See Rodriguez-Herrera v. INS*, *supra*, at 240 (noting that the United States Court of Appeals for the Ninth Circuit has "held only that *without* an evil intent, a statute does *not* necessarily involve moral turpitude"); *Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) (noting that "[a] crime involving the willful commission of a base or depraved act is a crime involving moral turpitude, whether or not the statute requires proof of evil intent"); *Guerrero de Nodahl v. INS*, *supra*, at 1406; *Matter of Franklin*, 20 I&N Dec. 867, 868 (BIA 1994) ("Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind."); *Matter of Danesh*, *supra*; *Matter of Wojtkow*, 18 I&N Dec. 111 (BIA 1981); *Matter of Medina*, 15 I&N Dec. 611, 614 (BIA 1976) (stating that the "presence or absence of a corrupt or vicious mind is not controlling" and that criminally reckless behavior may be a basis for a finding of moral turpitude), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171 (7th Cir. 1977). *But see Matter of Khourn*, 21 I&N Dec. 1041, 1046 (BIA 1997) ("The Board has held that 'evil intent' is a requisite element for a crime involving moral turpitude."); *Matter of Flores*, 17 I&N Dec. 225, 227 (BIA 1980) (holding that an "evil or malicious intent is said to be the essence of moral turpitude"); *Matter of Abreu-Semino*, 12 I&N Dec. 775, 777 (BIA 1968)

(finding that "crimes in which evil intent is not an element, no matter how serious the act or harmful the consequences, do not involve moral turpitude").

Certain crimes have been readily categorized as involving moral turpitude. For example, the United States Supreme Court has noted that "fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." *Jordan v. De George*, *supra*, at 229. Other crimes involving acts of baseness or depravity have been found to be crimes involving moral turpitude even though they have no element of fraud and, in some cases, no explicit element of evil intent (e.g., murder, rape, robbery, kidnaping, voluntary manslaughter, some involuntary manslaughter offenses, aggravated assaults, mayhem, theft offenses, spousal abuse, child abuse, and incest). *See Matter of Lopez-Meza*, *supra*. Statutory rape is notable in that it has been found to involve moral turpitude even though it has no intent element. *See Castle v. INS*, *supra*, at 1066 (stating that the "inherent nature" of the offense "is so basically offensive to American ethics and accepted moral standards as to constitute moral turpitude per se"); *Marciano v. INS*, 450 F.2d 1022 (8th Cir. 1971); *Matter of Dingena*, 11 I&N Dec. 723 (BIA 1966). While it is generally the case that a crime that is "malum in se" involves moral turpitude and that a "malum prohibitum" offense does not, this categorization is more a general rule than an absolute standard. *See Kempe v. United States*, 151 F.2d 680, 688 (8th Cir. 1945). Whereas in some areas, such as fraud, the inquiry into moral turpitude may be straightforward, in others, such as the present case, it is not and requires a case-by-case approach.

Neither the seriousness of a criminal offense nor the severity of the sentence imposed is determinative of whether a crime involves moral turpitude. *Matter of Serna*, 20 I&N Dec. 579, 581 (BIA 1992). It is also not controlling that the crime at issue is a felony. *See Matter of Short*, 20 I&N Dec. 136, 137 (BIA 1989); *Matter of Abreu-Semino*, *supra*, at 777. Rather, in determining whether a crime involves moral turpitude, the specific statute under which the conviction occurred is controlling. *See Matter of Khourn*, *supra*, at 1044; *Matter of Franklin*, *supra*, at 868-69. If the statute defines a crime in which turpitude necessarily inheres, then, for immigration purposes, the offense is a crime involving moral turpitude. *Matter of Short*, *supra*, at 137. Thus, whether a particular crime involves moral turpitude "is determined by the statutory definition or by the nature of the crime not by the specific conduct that resulted in the conviction." *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980). The crime must be one that necessarily involves moral turpitude without consideration of the circumstances under which the crime was, in fact, committed. *See Goldeshtein v. INS*, 8 F.3d 645, 647 (9th Cir. 1993). It is therefore necessary to engage in an objective analysis of whether the elements necessary to obtain a conviction under the particular statute render the offense

a crime involving moral turpitude.  *See Burr v. INS*, 350 F.2d 87 (9th Cir. 1965); *Matter of Short*, *supra*.

Our decision in *Matter of Lopez-Meza*, *supra*, specified that a conviction under section 28-697(A)(1) of the Arizona Revised Statutes is a conviction for a crime involving moral turpitude because the statute requires a showing that a defendant drove under the influence of alcohol, knowing that his or her driver's license had been suspended, canceled, revoked, or refused and that he or she was therefore not permitted to drive.  In determining that an aggravated DUI conviction under section 28-697(A)(1) of the Arizona Revised Statutes is a conviction for a crime involving moral turpitude, we specifically noted the following:

> The finding of moral turpitude in the crimes in the present case does not arise simply from an amalgamation of distinct separate offenses; rather, it results from a building together of elements by which the criminalized conduct deviates further and further from the private and social duties that persons owe to one another and to society in general.  There is inherent difficulty in determining whether marginal offenses are crimes involving moral turpitude.  *See Jordan v. De George*, *supra*, at 231.  In our view, a simple DUI offense is such a marginal crime.  However, when that crime is committed by an individual who knows that he or she is prohibited from driving, the offense becomes such a deviance from the accepted rules of contemporary morality that it amounts to a crime involving moral turpitude.

*Matter of Lopez-Meza*, *supra*, at 11.

The aggravating factor rendering the DUI conviction a crime involving moral turpitude in *Matter of Lopez-Meza* was the culpable mental state needed for a conviction under section 28-697(A)(1) of the Arizona Revised Statutes. This mental state was demonstrated by the required showing that the defendant knew, at the time that he was driving while under the influence of alcohol, that his driver's license had been suspended and that he was not permitted to drive. *See State v. Cramer*, 962 P.2d 224 (Ariz. Ct. App. 1998); *State v. Superior Court*, 945 P.2d 1334 (Ariz. Ct. App. 1997); *State v. Agee*, 887 P.2d 588 (Ariz. Ct. App. 1994).  We specifically noted that simple DUI is ordinarily a regulatory offense that requires no culpable mental state, such as intent or knowledge. We therefore found that a conviction for a simple DUI offense under Arizona law was not a conviction for a crime involving moral turpitude because it did not require a showing of a culpable mental state.  *Matter of Lopez-Meza*, *supra*.

Demonstration of such a culpable mental state is not required for a conviction under section 28-697(A)(2) of the Arizona Revised Statutes.  Rather, the "aggravating" factor for an aggravated DUI conviction under that section is the fact that an individual has previously been convicted of DUI two times within 60 months.  The respondent correctly argues that a conviction under section 28-697(A)(2) of the Arizona Revised Statutes is based on an aggregation of simple DUI convictions, which, as noted in *Matter of Lopez-Meza*, *supra*, do

not individually constitute crimes involving moral turpitude. We find that multiple convictions for the same DUI offense, which individually is not a crime involving moral turpitude, do not, by themselves, aggregate into a conviction for a crime involving moral turpitude. *See Matter of Fualaau*, 21 I&N Dec. 475 (BIA 1996); *Matter of Short*, *supra*.[4] Were we to adopt the Service's position, we would be faced with the illogical scenario of finding that a person convicted under section 28-697(A)(2) had committed a crime involving moral turpitude, whereas another person convicted of three separate simple DUI convictions within the same period of time, but not convicted of "aggravated" DUI under section 28-697(A)(2), had *not* committed a crime involving moral turpitude.

As we noted in *Matter of Lopez-Meza*, *supra*, DUI is a marginal crime, and reasonable persons can differ on whether various combinations or aggravating factors can result in conduct that "deviates further and further from the private and social duties that persons owe to one another and to society in general," so as to render it a crime involving moral turpitude. *Id.* at 12. Under the facts of this case, however, we agree with the respondent that nonturpitudinous conduct is not rendered turpitudinous through multiple convictions for the same offense. Our decision in *Matter of Lopez-Meza* does not extend the definition of a crime involving moral turpitude to that degree, and the Service has cited no authority to support such an expansion. Therefore, we find that the Service has not demonstrated error in the Immigration Judge's determination that a conviction under section 28-697(A)(2) of the Arizona Revised Statutes does not constitute a conviction for a crime involving moral turpitude.

## III. CONCLUSION

We find that the Immigration Judge properly determined that the respondent has not been convicted of a crime involving moral turpitude and therefore is not inadmissible to the United States under section 212(a)(2)(A)(i) of the Act. The Service has failed to demonstrate that the respondent is otherwise inadmissible to the United States. He therefore does not require a waiver of inadmissibility in order to be granted adjustment of status under section 245(a) of the Act.

---

[4]    Board Member Cole's dissenting opinion argues that this approach is simplistic and contrary to our reasoning in *Matter of Lopez-Meza*, *supra*. In fact, our approach analyzes the respondent's offense according to the specific elements required for a conviction and is otherwise consistent with *Matter of Lopez-Meza*. We emphasize that the respondent in the present case was convicted of multiple convictions for the identical DUI offense. That is different from the defendant in *Lopez-Meza*, whose conviction resulted from his driving under the influence knowing that his license had been suspended, canceled, revoked or otherwise restricted. By equating the conviction here with that in *Matter of Lopez-Meza*, the dissent is reading a "knowledge" element into section 28-697(A)(2) that is simply not there.

As previously noted, the Service has not challenged the Immigration Judge's determination that the respondent is otherwise eligible for adjustment of status or that he merits such relief in the exercise of discretion. We therefore find that the Immigration Judge's decision granting the respondent adjustment of status under section 245(a) of the Act was proper. For the foregoing reasons, the Service's appeal will be dismissed.

**ORDER:** The appeal of the Immigration and Naturalization Service is dismissed.

*CONCURRING OPINION*: Lory Diana Rosenberg, Board Member

I respectfully concur.

The majority opinion makes crystal clear that in determining whether an offense is a crime involving moral turpitude, "the specific statute under which the conviction occurred is controlling." *Matter of Torres-Varela*, 23 I&N Dec. 78, 84 (BIA 2001) (citing *Matter of Khourn*, 21 I&N Dec. 1041, 1044 (BIA 1997)). I agree.

Although it is tempting to take issue with the moralistic tone that seems to pervade the two dissenting opinions, these opinions actually suffer from a far more fundamental legal error. While one finds that the respondent's act of drunk driving is inherently "wrong," the other finds that the respondent's "choosing" to drink and drive after being convicted of such an offense is "wrong." Each opinion violates the long established principles of construction on which we rely to determine when a conviction for a particular crime constitutes an immigration violation subjecting the offender to removal. Each urges us to go beyond the crime as defined in the statute under which the respondent was convicted to determine that the respondent's conviction is a crime involving moral turpitude.

I write separately to underscore the propriety of the interpretive principles that we have followed for more than half a century, and to highlight the errors in the dissenting opinions.

## I. INTERPRETING A CONVICTION AS A CRIME INVOLVING MORAL TURPITUDE

When we construe a conviction under a state statute to determine whether such a conviction constitutes a ground of inadmissibility or deportability under the Immigration and Nationality Act, we look exclusively to the elements of the statute under which the respondent was convicted. *Matter of B-*, 6 I&N Dec. 98, 106 (BIA 1954) ("It is well settled that the presence or absence of moral turpitude must be determined, in the first instance, *from a consideration of the crime as defined by the statute*; that we cannot go behind the judgment of conviction to determine the precise circumstances surrounding the commission

of the crime."). Thus, whether a crime involves moral turpitude is determined either by the statutory definition or by the nature of the crime, *not* by the specific conduct that resulted in the conviction. *See Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) ("We therefore disregard the victim's age and the particular familial relationship allegedly involved in the crimes . . . . Our task is to decide *whether this law defines a crime that necessarily involves 'moral turpitude.'*" (emphasis added)); *see also Goldeshtein v. INS*, 8 F.3d 645, 647 n.4 (9th Cir. 1993); *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980); *Guerrero de Nodahl v. INS*, 407 F.2d 1405, 1406 (9th Cir. 1969) (emphasizing that it is not the offender's motive or the offender's action, but how the statute is defined, that matters).

Therefore, we must put aside any personal reaction we may have to what we may know about what the respondent did that resulted in his conviction. We must let go of any presumptions we may have concerning what the respondent knew or should have known when he violated the statute that prohibits driving under the influence on more than one occasion. Our mandate is to engage in an objective, not a subjective, analysis.

To be sure, the determination whether a crime is one involving moral turpitude necessarily involves, to some extent, our own subjective judgments concerning "the prevailing views in society." *Matter of Torres-Varela*, *supra*, at 83 (citing *Matter of G-*, 1 I&N Dec. 59, 60 (BIA 1941)). However, that determination is limited to our views regarding the statutory elements of the offense of which the respondent was convicted, i.e., the "crime as defined." It does not depend on our views of the particular conduct leading to the respondent's conviction. In short, "[t]he statute under which the conviction occurred controls." *Matter of Short*, 20 I&N Dec. 136, 137 (BIA 1989); *see also Matter of Franklin*, 20 I&N Dec. 867 (BIA 1994), *aff'd*, 72 F.3d 571 (8th Cir. 1995), *cert. denied*, 519 U.S. 834 (1996); *Matter of Serna*, 20 I&N Dec. 579 (BIA 1992).

## A. Elements of the Statute Under Which the Respondent Was Convicted

Although the question whether a statute defines a crime involving moral turpitude is one of federal law, we look to the elements of the crime, as provided in the state law under which the alien was convicted, to determine the conviction's consequences in removal proceedings. *Matter of H-*, 7 I&N Dec. 359, 360 (BIA 1956). In the case before us, the statute under which the respondent was convicted requires a showing of "driv[ing] or be[ing] in actual physical control of any vehicle . . . [w]hile under the influence of intoxicating liquor" to obtain a conviction. Section 28-692(A)(1) of the Arizona Revised Statutes. The respondent was also convicted under section 28-697(A)(2), which calls for evidence of "aggravated driving or actual physical control," based upon

a showing that the offender "[c]ommits a third or subsequent violation of § 28-692."

In determining whether the respondent is subject to removal based on the ground of deportability that has been charged, we are not to be concerned with whether the respondent is actually guilty or innocent of this crime; he was convicted. We are not to be concerned with what the respondent actually did; he was convicted. Unlike legislators, we do not consider issues of social policy relating to his conviction; he was convicted. Unlike parole boards or administrative adjudicators exercising discretion to ameliorate or waive the effects of a conviction, we do not consider reformation or recidivism in determining whether the respondent is subject to removal. He was convicted, and it is the crime of which he was convicted with which we are concerned.

The United States Court of Appeals for the Ninth Circuit, the jurisdiction in which this case arises, has made clear consistently that "we must focus on the crime *categorically as defined by the statute*, and not on the specific conduct of [the respondent]." *Rodriguez-Herrera v. INS*, 52 F.3d 238, 239-40 (9th Cir. 1995) (emphasis added); *see also Gonzalez-Alvarado v. INS*, *supra*, at 246. Likewise, we have emphasized that the specific statute under which the conviction occurred is controlling. *See Matter of Khourn*, *supra*, at 1044, 1046; *see also Matter of Sweetser*, Interim Decision 3390, at 6 (BIA 1999) ("[T]he focus is on the elements required to sustain the conviction." (citing *Matter of Pichardo*, 21 I&N Dec. 330 (BIA 1996))).

Moreover, we have made clear time and again that only when a statute is divisible, i.e., when it describes some conduct that will support finding an immigration violation and some that will not, will we look beyond the statute to the record of conviction in order to determine the particular offense of which the respondent was convicted. *See, e.g.*, *Matter of Sweetser*, *supra*, at 6-7. Even under those circumstances, we are not concerned with what the respondent actually *did*, but with the conduct on which his conviction was based.

No one disagrees that the Board previously has held that a conviction for criminally reckless conduct may support a finding that the conviction is for a crime involving moral turpitude. *See Matter of Torres-Varela*, *supra*, at 83-84; *id.* at 97 (Cole, dissenting); *see also Matter of Wojtkow*, 18 I&N Dec. 111 (BIA 1981); *Matter of Medina,* 15 I&N Dec. 611 (BIA 1976), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171 (7th Cir. 1977). But, that does not mean that every case in which an offender engages in reckless conduct amounts to a crime involving moral turpitude.

In each of the precedent decisions in which we so held, recklessness—or a conscious disregard for a substantial risk—was an element of the statute under which the respondent had been convicted, *and* a crime resulting in injury to the victim already had occurred. It also should be noted that, by contrast, the Board found that a conviction for criminal negligence, in which the offender failed to be aware of a substantial risk of injury flowing from his conduct, was *not* a

crime involving moral turpitude. *See Matter of Perez-Contreras*, 20 I&N Dec. 615, 618 (BIA 1992) (finding third degree assault to be neither a firearm offense nor a crime involving moral turpitude).  In the case before us, neither reckless nor negligent conduct is an element of the offense as defined by the statute, and no injury has occurred at all.  Indeed, to obtain a conviction under section 28-692 or 28-697(a)(2) of the Arizona Revised Statutes, it is not necessary to prove either "intent" or a crime resulting in an injury.

### B.  The Board's Prior Decision in *Matter of Lopez-Meza*

Less than 18 months ago, Board Member Cole and the three Board Members who have joined her dissenting opinion agreed with the majority that "[s]imple DUI is ordinarily a regulatory offense that involves no culpable mental state requirement, such as intent or knowledge . . . .  We find that the offense of driving under the influence under Arizona law does not, without more, reflect conduct that is necessarily morally reprehensible or that indicates such a level of depravity or baseness that it involves moral turpitude."  *Matter of Lopez-Meza*, Interim Decision 3423, at 8-9 (BIA 1999).[1]

Board Member Cole now asserts that our decision in *Matter of Lopez-Meza* provides support for her position that the aggregated nature of the respondent's convictions for more than one DUI changes what is simply a subsequent conviction for simple DUI into something more.  That is incorrect.  This case presents multiple convictions for the same offense, not a second conviction for a distinct offense containing an additional element of mens rea, such as the one at issue in *Matter of Lopez-Meza*, *supra*.

Nevertheless, the dissent asserts that "the 'aggregating' factor here: choosing to drink and drive, knowing that one has already been convicted" can transform a nonturpitudinous crime into a crime involving moral turpitude.  *Matter of Torres-Varela*, *supra*, at 98 (Cole, dissenting).  But, the argument that what the respondent did, rather than the elements of the crime of which the respondent was convicted, should have a bearing on our determination whether a crime involves moral turpitude was soundly rejected in *Matter of Short*, *supra*.  The dissent offers no basis on which we should resurrect and accept such an argument.[2]  As we emphasized in *Matter of Short*, moral turpitude cannot be

---

[1]  In *Matter of Lopez-Meza*, *supra*, at 8, the Board specifically found that
    [i]n *State v. Thompson*, 674 P.2d 895 (Ariz. Ct. App. 1983), simple DUI under section 28-692 of the Arizona Revised Statutes was found not to be a malum in se offense because it did not require a culpable mental state . . . .  The absence of such law [specifically addressing the question whether simple DUI is a crime involving moral turpitude] suggests a long historical acceptance that a simple DUI offense does not inherently involve moral turpitude.

[2]  Notwithstanding my disagreements with the majority in *Matter of Lopez-Meza*, *supra*,
(continued...)

viewed as arising from some "undefined synergism" by which two offenses, which do not involve moral turpitude, somehow combine to create one crime involving moral turpitude. *Id.* at 139; *see also United States ex rel. Zaffarano v. Corsi*, 63 F.3d 757, 758 (2d Cir. 1933) (ruling that assault is not a crime involving moral turpitude unless combined with another offense that involves moral turpitude).

The dissent's position that repeated convictions for the same offense can turn a nonturpitudinous crime into a crime involving moral turpitude requires inappropriate consideration of factors that are not elements of the crime of which the respondent was convicted. In particular, the dissent of Board Member Cole urges that the respondent *"may be presumed* to know the seriousness of this conduct. *He nevertheless chose* to drink and drive." *Matter of Torres-Varela*, *supra*, at 98 (Cole, dissenting) (emphasis added). However, neither actual nor presumed knowledge is an element of the offense of DUI. Similarly, *choosing* to drink and drive is not an element of the offense. Furthermore, even though repeated convictions for simple DUI may result in an increased penalty, the elements of each subsequent crime are identical to the elements of the original crime. Thus, the fact of a prior conviction is not an element of the offense. To treat aggregation—or the fact of multiple convictions for simple DUI—as affecting the nature of those convictions individually or cumulatively, one must interpose one's subjective judgment that, having been convicted once, the offender knew or should have known that his conduct was criminal or harmful. That is precisely the type of deviation from an objective assessment of deportability that the "crime as defined" approach we have followed historically is intended to avoid.

Perhaps the dissent is reacting in part to the *Lopez-Meza* majority's ambiguous statement concerning the element of "knowledge." In that case, the majority failed to expressly qualify knowledge in relation to the crime of DUI as a relevant factor when, and only when, it is an element of a subsequent offense that is specifically defined to include knowledge as an element. Instead, the majority referred to commission of the offense by one "who knows that he or she is prohibited from driving" and found that under such circumstances "the offense becomes such a deviance from the accepted rules of contemporary morality." *Matter of Lopez-Meza*, *supra*, at 11.

In essence, however, the *Lopez-Meza* majority can only have been referring to the actual *elements* of the offense of which the respondent in that case was

---

[2] (...continued)

it seems clear to me that when the *Lopez-Meza* majority, of which the dissenting Board Members were part, insisted that "additional *aggravating elements* can often transform an offense that otherwise would not be a crime involving moral turpitude into one that is," they were addressing aggravating elements within the language of the crime as defined under the relevant criminal statute. *Id.* at 11 (emphasis added).

convicted. To read that language as allowing us to go further in speculating, supposing, or even determining whether the respondent had actual knowledge puts us in the position of inappropriately determining culpability or retrying the respondent for the offense in the course of determining whether the crime involves moral turpitude. *See Matter of Danesh*, 19 I&N Dec. 669, 670 (BIA 1988) ("[T]he law is well established that in deportation proceedings the immigration judge cannot go behind the judicial record to determine the guilt or innocence of an alien." (citing *Matter of Khalik*, 17 I&N Dec. 518 (BIA 1980); *Matter of McNaughton*, 16 I&N Dec. 569 (BIA 1978); *Matter of Fortis*, 14 I&N Dec. 576 (BIA 1974))); *see also Matter of Sirhan*, 13 I&N Dec. 592, 594 (BIA 1970).

   In sum, we are not to be concerned with whether the respondent's conduct was "accidental" or not, or whether the respondent's conduct reflected "willingness" to engage in arguably reckless activity. *See Matter of Torres-Varela*, *supra*, at 98 (Cole, dissenting). The question is whether the respondent was convicted of a crime involving moral turpitude. *See Matter of Short*, *supra*. "In answering this question, we must focus on the crime categorically as defined by the statute, and not on the specific conduct of [the respondent]." *Rodriguez-Herrera v. INS*, *supra*, at 239-40 (citing *Goldeshtein v. INS*, *supra*, at 647).

## II. CHARACTERIZING THE EFFECT OF OUR DECISION IN *MATTER OF MAGALLANES*

   Board Member Cole resorts to portions of the text of our decision in *Matter of Magallanes*, Interim Decision 3341 (BIA 1998), to support her argument that we have found that DUI is an inherently reckless act that exacts a high societal toll, as it results in death, injury, and property damage. *See id.* at 5-6. Nevertheless, she fails to differentiate between the inquiries we are charged with making in determining whether an offense is a crime of violence and the ones we must make in determining whether an offense is a crime involving moral turpitude.[3] This failure completely ignores the principles, discussed above, that require us to consider the crime as defined, and not to interpose our subjective judgment or to speculate about what we think the respondent might

---

[3] In brief, conviction for an offense under the relevant sections of Arizona law may be for an aggravated felony if it satisfies the statutory language in section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. V 1999), referring to a crime of violence. To constitute such an offense, the conviction must be for a crime that either includes the actual, attempted, or threatened use of force as an element of the offense, or that, by its nature, poses a substantial risk that force will be used in the commission of the offense. *See Matter of Magallanes*, *supra* (referring to 18 U.S.C. §§ 16(a) and 16(b)).

have done, in determining whether conviction for an offense renders an individual subject to removal.

Moreover, none of the factors that Board Member Cole notes are elements of the crime of DUI under any version or section of Arizona law. Even worse, consideration of these factors in the instant case extends way past the record of conviction and the conduct of the respondent as it relates to the elements of the criminal statute and the crime of which he was convicted. On these bases alone, comparison to the Board's ruling in *Matter of Magallanes*, *supra*, is inapposite and inappropriate.

Furthermore, in relying on *Matter of Magallanes* in this way, the dissent also appears to ignore our two subsequent decisions, where we modified our holding in *Matter of Magallanes*, *supra*. First, in *Matter of Sweetser*, *supra*, the Board, as a unanimous body, acknowledged that there was a need to qualify our decision in *Matter of Magallanes*. There, we held that "[w]e . . . clarify our decision in that case [to reflect that] . . . *criminal offenses that have the potential for harm do not always share a substantial risk that force will be used* [in the course of committing the offense]." *Matter of Sweetser*, *supra*, at 9 (emphasis added).

Second, in *Matter of Puente*, Interim Decision 3412 (BIA 1999), the Board took another step toward correcting the errors in our precedent in *Matter of Magallanes*, *supra*, differentiating between the use of force and the result of harm or injury. We acknowledged that while "[c]riminal offenses that carry a substantial risk that force will be used also share the potential to result in harm . . . we recognize that [such] offenses that have the potential for harm do not always carry a substantial risk that force will be used in their commission." *Matter of Puente*, *supra*, at 11 (citations omitted). We concluded that "*[a]bsent a causal link between the harm and the force*, a criminal offense cannot be identified as a crime of violence under 18 U.S.C. § 16(b)." *Id.* (emphasis added).[4]

The dissent seems to disregard the fact that we have virtually abandoned the underpinnings of any basis for reliance on the *resulting* factors, such as injury or property damage, that were cited in *Matter of Magallanes*, for any purpose. Stated simply, the substantial risk of such injury is not dispositive of the nature of an offense under section 101(a)(43)(F) of the Act. Thus, even the risk of harm does not make an offense an aggravated felony; it is *the use of force* that

---

[4] I was the only Board Member to have specifically abandoned our holding in *Matter of Magallanes*, *supra*, and I took personal responsibility for changing my position. *See Matter of Puente*, *supra*, at 18 (Rosenberg, dissenting). In addition, I noted that the Board's decision in *Matter of Puente* perpetuated the confusion we created in *Matter of Magallanes* by erroneously equating the risk of injury resulting from drunk driving and the risk that the perpetrator might resort to force in order to accomplish the crime. *Id.* at 20 (Rosenberg, dissenting).

is relevant. Similarly, the speculative possibility of harm that is not even mentioned in a statute under which the respondent was convicted is completely irrelevant to our determination of whether a crime involves moral turpitude.

## III.  INTERPRETING THE RESPONDENT'S CONVICTION AS AN AGGRAVATED FELONY

Even more importantly, I must address whether the respondent's conviction actually constitutes an aggravated felony. Although this is not an issue on appeal, it is brought to the fore by the dissenting opinion's reliance on *Matter of Magallanes*, *supra*. If the respondent's conviction is not for an aggravated felony, then these proceedings must be terminated altogether.

In my dissenting opinion in *Matter of Puente*, *supra*, I urged the Board to construe the statute classifying a conviction for a "crime of violence (as defined in section 16 of title 18, United States Code)" as an aggravated felony, narrowly and consistently with the plain language of 18 U.S.C. § 16. *See* section 101(a)(43)(F) of the Act. In analyzing subsections (a) and (b) of 18 U.S.C. § 16, I concluded that the offense of drunk driving is not a crime of violence because a conviction for the offense under the state statute does not require evidence of the use of force, and also because the offense, by its nature, does not entail a substantial risk that the offender would resort to the use of physical force in the course of committing the offense. Rather than impose a sweeping reading of "crime of violence," which I do not believe the statute requires or supports, I followed the wise counsel of the United States Supreme Court that "we will not assume that Congress meant to trench on [an alien's] freedom beyond *that which is required by the narrowest of several possible meanings of the words used*" in the statute. *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948) *(*emphasis added).

As I reasoned in my dissenting opinion in *Matter of Puente*, *supra*, there is a serious question whether the offense of driving while intoxicated is one in which the offender could or would form an intent to use force to accomplish the crime. *Id.* at 22-23 (Rosenberg, dissenting). I also distinguished the use of force in accomplishing the crime and the potential injury that might result from a crime. *Id.*

The validity of these distinctions has been substantiated by the decision of the Fifth Circuit in *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001). In *Chapa-Garza*, the court rejected the idea that an individual who engaged in drunk driving could be held responsible for the unintentional harm that may result from his conduct. The court held that

> [w]hile the victim of a drunk driver may sustain physical injury from physical force being applied to his body as a result of collision with the drunk driver's errant automobile, it is clear that such force has not been intentionally "used" against the other person by the

drunk driver at all, much less in order to perpetrate any crime, including the crime of felony DWI.

*Id.* at 927. The court went on to clarify that

> [t]he crime of Texas felony DWI is committed when the defendant, after two prior DWI convictions, begins operating a vehicle while intoxicated. *Intentional* force against another's person or property is virtually never employed to commit this offense. Accordingly, we hold that felony DWI is not a crime of violence as defined by 18 U.S.C. § 16(b).

*Id.* Therefore, in the absence of explicit evidence in the record of conviction that the offense on which the respondent's conviction was based, by its nature, involved a substantial risk of the use of force, a charge that the respondent was convicted of a crime of violence cannot be sustained. *See* section 240(c)(3)(A) of the Act, 8 U.S.C. § 1229a(c)(3)(A) (Supp. V 1999); *see also Matter of Short*, *supra*, *at* 137-38.

I believe that the advent of the *Chapa-Garza* decision has called into question our analytical framework for determining convictions for crimes of violence. Although I must follow precedent, I believe that it is time for the Board to reconsider and vacate our ruling in *Matter of Puente*, *supra*.[5] I find that the recent decision of the Fifth Circuit in *United States v. Chapa-Garza*, which sets forth a well-reasoned and persuasive interpretation that is squarely at odds with that in *Matter of Puente*, provides the impetus for such reconsideration. Therefore, I favor following the Fifth Circuit's reasoning to conclude that driving under the influence does *not* pose a substantial risk that force will be used in the commission of the offense and that it is *not* a crime of violence as defined under section 101(a)(43)(F) of the Act for immigration purposes. *See United States v. Parson*, 955 F.2d 858 (3d Cir. 1992). *But see Tapia Garcia v. INS*, 237 F.3d 1216 (10th Cir. 2001) (endorsing the Board's interpretation in *Matter of Puente*, *supra*).

Consequently, I concur. In the case before us, the appeal of the Immigration and Naturalization Service should be dismissed; the Immigration Judge's grant of the respondent's application for adjustment of status should be sustained; or, in the alternative, these proceedings should be terminated.

## DISSENTING OPINION: Michael J. Heilman, Board Member

I respectfully dissent.

I wonder if the majority, which finds this offense not to be a crime involving moral turpitude, would also find that a drunk driver who has killed a dear family

---

[5] As the instant case arises within the jurisdiction of the Ninth Circuit, which has not yet directly addressed the issue, our precedent is controlling.

member or friend has not committed a profound wrong. The majority finds that drunk driving, or its more polite characterization, "driving while under the influence," is not inherently wrong, so one would be led logically to the conclusion that killing or maiming someone while so driving would not be wrong either, simply because the consequences of that behavior did, in fact, lead to tragedy. The underlying premise of the majority's opinion is incorrect.

Unlike the majority, I do not find the question whether drunk driving is a crime involving moral turpitude to be a difficult one. It is, if one applies the standard that has been applied for 50 years or more in the immigration law. In 1954, this Board summarized the existing standard as to how to judge whether conduct was morally turpitudinous. This standard still applies today. We stated then that moral turpitude is "anything done contrary to justice, honesty, principle, or good morals; an act of baseness, violence or depravity in the private and social duties which a man shows to his fellowman or to society in general, contrary to accepted and customary rules of right and duty between man and man. It implies something immoral in itself." *Matter of P-*, 6 I&N Dec. 400, 403-04 (BIA 1954). I wonder how driving drunk upon the highways of this land does not constitute conduct falling within this standard, how this conduct is not an "act of baseness" contrary to "accepted and customary rules of right and duty" owed to the people of this country.

I would find the respondent's conviction for aggravated driving under the influence to be a conviction for a crime involving moral turpitude.

*DISSENTING OPINION*: Patricia A. Cole, Board Member, in which Lori L. Scialabba, Acting Chairman; Philemina McNeill Jones and Edward R. Grant, Board Members, joined

I respectfully dissent. I would find that the respondent is ineligible for adjustment of status under section 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a) (1994), because he is inadmissible as a result of having been convicted of a crime involving moral turpitude. *See* section 212(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (Supp. V 1999).

The respondent has been convicted of aggravated driving under the influence ("DUI") in violation of sections 28-692(A)(1) and 28-697(A)(2), (D), (F), (H)(1), (I), and (J) of the Arizona Revised Statutes. It is an aggravated offense, and a class 4 felony, because he committed it after having already been convicted of DUI at least twice before.

In concluding that this offense is not a crime involving moral turpitude, the majority improperly focuses on the fact that the statute under which the respondent was convicted, section 28-697(A)(2) of the Arizona Revised Statutes, does not list as a requirement for conviction a specific showing of a culpable mental state. On that basis, they find the instant case distinguishable from our decision in *Matter of Lopez-Meza*, Interim Decision 3423 (BIA

1999), in which we found that a conviction for aggravated driving under the influence in violation of another paragraph of the Arizona statute, section 28-697(A)(1), is a conviction for a crime involving moral turpitude. Section 28-697(A)(1) requires a finding that the defendant drove while under the influence with knowledge that he was prohibited from driving under any circumstances. According to the majority, the absence of an equivalent knowledge element in section 28-697(A)(2) equates to no moral turpitude.

I disagree. Although crimes of moral turpitude often include an element of evil intent or "knowledge," there is no specific intent requirement attached to finding that a crime involves moral turpitude. *Matter of Wojtkow*, 18 I&N Dec. 111 (BIA 1981); *Matter of Medina*, 15 I&N Dec. 611 (BIA 1976) (holding that whether an act was committed with an evil or corrupt mental state is not controlling, and that criminally reckless behavior can be morally turpitudinous), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171 (7th Cir. 1977); *see also Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 (9th Cir. 1995) (noting that the United States Court of Appeals for the Ninth Circuit has held only that conduct prohibited by a statute that does not include an element of evil intent does not necessarily involve moral turpitude). Thus, treating the absence of intent as the controlling factor oversimplifies the issue and is contrary to case law.

The Immigration Judge found that the respondent's conviction, for which he was sentenced to 1½ years' imprisonment, is a conviction for an aggravated felony crime of violence as defined at section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. V 1999). *See Matter of Magallanes*, Interim Decision 3341 (BIA 1998). In *Matter of Magallanes*, *supra*, we concluded that aggravated drunk driving is the type of offense that creates a substantial risk of harm to persons and property. We stated further that "drunk driving is an *inherently reckless act*, which exacts a high societal toll in the forms of death, injury, and property damage." *Id.* at 5-6 (emphasis added).[1] That criminal recklessness supports a finding that the respondent's offense is a crime of moral turpitude. *Matter of Wojtkow*, *supra*; *Matter of Medina*, *supra*.

Moreover, the majority points out that we found in *Matter of Lopez-Meza*, *supra*, that a simple DUI conviction under section 28-692 of the Arizona Revised Statutes was not a crime involving moral turpitude. The majority therefore reasons that multiple convictions for an offense that individually is not a crime involving moral turpitude do not aggregate into a crime involving moral turpitude. This reasoning is oversimplistic, and it departs from the direction we followed in *Matter of Lopez-Meza*. There, our finding that a conviction under section 28-697(A)(1) constituted a crime involving moral turpitude "result[ed]

---

[1] We also noted that a federal district court within the jurisdiction of the Ninth Circuit had characterized driving under the influence as malum in se. *Bronson v. Swinney*, 648 F. Supp. 1094, 1100 (D. Nev. 1986), *rev'd on other grounds sub nom. Bronson v. McKay*, 870 F.2d 1514 (9th Cir. 1989). *Matter of Magallanes*, *supra*, at 6 n.2.

from a building together of elements by which the criminalized conduct deviates further and further from the private and social duties that persons owe to one another and to society in general." *Id.* at 11. We also emphasized that simple DUI is a "marginal offense," meaning that its classification as not inherently involving moral turpitude is not clear cut. *Id.* The "aggregating" factor in *Matter of Lopez-Meza*, driving with knowledge that one is forbidden to drive, is no greater "a deviance from the accepted rules of contemporary morality," *id.* at 11, than the "aggregating" factor here: choosing to drink and drive, knowing that one has already been convicted twice of this inherently dangerous offense. In other words, the specific "knowledge" element on which the majority would have the difference between these two cases turn is neither turpitudinous in and of itself nor exclusive of other elements that, when aggregated with a drunk driving offense, may make that offense turpitudinous.

Conviction under section 28-697(A)(2) requires repeated inherently reckless conduct after having been placed on notice of its prohibition by at least two prior convictions for DUI. *See Matter of Magallanes*, *supra* (stating that drunk driving is an inherently reckless act). It is not a simple DUI offense. The respondent, having twice previously been convicted of driving under the influence, may be presumed to know the seriousness of this conduct. He nevertheless chose to drink and drive. Neither decision can be classified as "accidental." The respondent's willingness, with knowledge of his previous convictions, to continue to engage in this behavior unquestionably involves conduct that is "contrary to justice, honesty, principle, or good morals; an act of baseness, violence[2] or depravity in the private and social duties which a man shows to his fellowman or to society in general, contrary to accepted and customary rules of right and duty between man and man." *Matter of P-*, 6 I&N Dec. 400, 403-04 (BIA 1954).

The respondent is inadmissible because he has been convicted of a crime involving moral turpitude and is ineligible for adjustment of status. Accordingly, I would sustain the Immigration and Naturalization Service's appeal from the Immigration Judge's grant of adjustment of status.

---

[2] An aggravated DUI was determined to be a crime of violence in *Matter of Magallanes*, *supra*.