# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HERNAN ISMAEL DELGADO,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 03-74442

Agency No.
A078-461-226

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 16, 2010—Pasadena, California

Filed August 19, 2011

Before: Alex Kozinski, Chief Judge, William C. Canby,
Stephen Reinhardt, Diarmuid F. O'Scannlain,
M. Margaret McKeown, Raymond C. Fisher, Jay S. Bybee,
Consuelo M. Callahan, Carlos T. Bea, Milan D. Smith, Jr.
and N. Randy Smith, Circuit Judges.

Opinion by Judge Fisher;
Partial Concurrence by Judge Reinhardt

**COUNSEL**

Niels W. Frenzen (argued), University of Southern California Gould School of Law, Los Angeles, California, and J. Thomas Logan, Los Angeles, California, for the petitioner.

Tony West, Assistant Attorney General, Civil Division, Linda S. Wernery, Assistant Director, and Erica B. Miles (argued), Attorney, U.S. Department of Justice, Washington, D.C., for the respondent.

Stephen W. Manning, Jennifer M. Rotman and Jessica M. Boell, Immigrant Law Group PC, Portland, Oregon, for amicus curiae American Immigration Lawyers Association.

H. Elizabeth Dallam, Office of the United Nations High Commissioner for Refugees, Washington, D.C., for amicus curiae Office of the United Nations High Commissioner for Refugees.

**OPINION**

FISHER, Circuit Judge:

Hernan Ismael Delgado petitions for review of a decision of the Board of Immigration Appeals (BIA) ordering him removed to his native El Salvador. The BIA affirmed the immigration judge's (IJ) ruling that Delgado was ineligible for asylum, withholding of removal and withholding under the Convention Against Torture (CAT) because he had been "convicted of a particularly serious crime" — driving under

the influence (DUI). 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). The BIA also ruled that Delgado was ineligible for deferral of removal under CAT because he failed to prove a likelihood of future torture. We grant the petition in part, deny it in part and remand to the BIA.[1] We hold as follows:

First, we hold that we have jurisdiction to review the BIA's determination that an alien has been convicted of a "particularly serious crime" and is therefore ineligible for withholding of removal. We held otherwise in *Matsuk v. INS*, 247 F.3d 999 (9th Cir. 2001), relying on 8 U.S.C. § 1252(a)(2)(B)(ii), which strips us of jurisdiction to review "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security."[2] We now overrule *Matsuk* in light of the Supreme Court's decision that § 1252(a)(2)(B)(ii) bars judicial review "only when Congress itself set out the Attorney General's discretionary authority in the statute." *Kucana v. Holder*, 130 S. Ct. 827, 837 (2010).

Second, we hold that, for purposes of withholding of removal, an offense need not be an aggravated felony to be a particularly serious crime. The BIA has so held in a precedential decision, *In re N-A-M-* (*N-A-M- I*), 24 I. & N. Dec. 336, 337 (B.I.A. 2007). That decision is entitled to deference under

---

[1] A three-judge panel, Judge Canby writing for the majority, initially dismissed in part and denied in part Delgado's petition, but later amended the opinion to grant a partial remand. *See Delgado v. Mukasey* (*Delgado I*), 546 F.3d 1017 (9th Cir. 2008), *withdrawn and superseded by Delgado v. Holder* (*Delgado II*), 563 F.3d 863 (9th Cir. 2009). Judge Berzon concurred in part and dissented in part in both opinions. We granted rehearing en banc, *see Delgado v. Holder*, 621 F.3d 957 (9th Cir. 2010) (order), and stayed the case pending the Supreme Court's decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010).

[2] Hereinafter, all statutory references are to 8 U.S.C. unless otherwise indicated.

*Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984). Thus, that driving under the influence is not statutorily defined as an aggravated felony does not preclude the BIA from determining that DUI can be a particularly serious crime.

Third, we hold that, for asylum purposes, the Attorney General has the authority to designate offenses as particularly serious crimes through case-by-case adjudication as well as regulation. The BIA — as the Attorney General's delegate — was thus permitted in this case to determine whether Delgado's DUI offenses were particularly serious for purposes of asylum eligibility.[3]

The remaining question is whether the BIA properly concluded that Delgado was convicted of a particularly serious crime and thus barred from eligibility for withholding of removal and asylum. The BIA's explanation for its decision is so ambiguous that we cannot conduct meaningful judicial review. We therefore remand to the BIA for a clear explanation. *See Su Hwa She v. Holder*, 629 F.3d 958, 963-64 (9th Cir. 2010); *Eneh v. Holder*, 601 F.3d 943, 947 (9th Cir. 2010).

## I. BACKGROUND

Delgado, a native and citizen of El Salvador, entered the United States on a nonimmigrant visitor visa in 1980. He fled El Salvador at age 10 after his mother and father were tortured and murdered for their political opinions. Delgado overstayed his visa and has remained in the United States since his entry in 1980. During his time in the United States, he has been convicted of DUI three times.

Delgado's first DUI conviction was in 1992. That conviction arose from an accident occurring when the vehicle he was

---

[3]"As adjudicator in immigration cases, the Board exercises authority delegated by the Attorney General." *Kucana*, 130 S. Ct. at 832.

driving collided with another vehicle. Both Delgado and his passenger suffered broken legs; it is not clear whether anyone in the other vehicle was injured. He received a one-year jail sentence.

His second DUI conviction occurred in 2000. Delgado was stopped for driving 85 miles an hour and weaving on a highway. He failed a field sobriety test, pled guilty to DUI and received a 16-month prison sentence. Upon his release on parole in July 2001, the Immigration and Naturalization Service (INS) took him into custody and initiated removal proceedings against him.[4] The INS charged that Delgado was removable for overstaying his 1980 visa and because his latest DUI was an aggravated felony.[5] An immigration judge released Delgado on bond.

Delgado's third DUI conviction followed. In December 2001, while Delgado was still on parole and had a suspended license, he was stopped for unsafe driving after being observed weaving between lanes on an interstate highway. His blood alcohol level was 0.12. He was convicted of DUI and sentenced to two years' imprisonment.

At his subsequent immigration hearing, Delgado, proceeding pro se, conceded removability but sought asylum, withholding of removal, CAT withholding and CAT deferral, claiming that he would be persecuted if returned to El Salvador.[6]

---

[4]On March 1, 2003, the detention and removal duties of the INS were transferred to the newly formed Bureau of Immigration and Customs Enforcement, a subdivision of the Department of Homeland Security. *See Resendiz v. Kovensky*, 416 F.3d 952, 954 n.1 (9th Cir. 2005) (citing the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135).

[5]The INS later dropped the aggravated felony charge.

[6]Delgado also sought cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act and suspension of deportation, but he has not sought review of the denial of those forms of relief.

The IJ denied Delgado's applications for withholding of removal, asylum and CAT withholding. In each case, the IJ concluded that Delgado was ineligible for relief because he had been convicted of a particularly serious crime. The IJ "conduct[ed] an individualized hearing to determine whether [Delgado's] convictions individually or cumulatively constitute[d] particularly serious crimes," and determined that *each* of Delgado's three DUI convictions was a particularly serious crime that barred him from eligibility for asylum under § 1158(b)(2)(A)(ii), withholding of removal under § 1231(b)(3)(B)(ii) and CAT withholding under 8 C.F.R. § 1208.16(d)(2). In the alternative, the IJ concluded that Delgado's DUI offenses were "particularly serious crimes" when considered *cumulatively*.

The IJ also denied Delgado's request for CAT deferral under 8 C.F.R. § 1208.17.[7] The IJ accepted that Delgado's parents were killed in 1980 on account of their political activities, but found that, as a result of improved country conditions, Delgado did not show that it was more likely than not that he would be tortured were he returned to El Salvador.

The BIA affirmed in an unpublished, per curiam decision signed by one member of the Board. The decision stated that Delgado "presented no arguments on appeal that would cause us to reverse the Immigration Judge's decision." On the particularly serious crime question, the Board said only: "Based on the record before us, we agree with the Immigration Judge that the respondent is subject to removal from the United States based on . . . his record of convictions which rise to the level of being a particular[ly] serious crime . . . ."

---

[7]Deferral of removal and withholding of removal are different forms of CAT protection. Both prohibit returning an alien to a specific country where he or she would likely face torture. An alien who is ineligible for CAT withholding may nonetheless be eligible for deferral of removal. *See* 8 C.F.R. § 1208.16(c)(4); *see also Abufayad v. Holder*, 632 F.3d 623, 631 (9th Cir. 2011); *Lemus-Galvan v. Mukasey*, 518 F.3d 1081, 1083 (9th Cir. 2008).

## II. DISCUSSION

Delgado raises three principal arguments in his petition for review. First, he contends that the BIA lacked the authority to treat his DUI offenses as particularly serious crimes for purposes of withholding of removal because only statutorily defined aggravated felonies can be treated as particularly serious crimes under § 1231. Second, he contends that the BIA lacked the authority to treat his DUI offenses as particularly serious crimes for purposes of asylum because only aggravated felonies and offenses designated by the Attorney General *by regulation* — as opposed to case-by-case adjudication — can constitute particularly serious crimes under § 1158. Finally, Delgado argues that, even if the BIA had authority to treat his DUI offenses as particularly serious crimes for purposes of withholding of removal, asylum or both, the BIA erroneously concluded that his DUI offenses were in fact particularly serious. We address Delgado's arguments in turn. Before doing so, however, we consider our jurisdiction.

### A. Jurisdiction

**[1]** There is no question that we have jurisdiction over this case to the extent it involves questions of statutory interpretation. *See* 8 U.S.C. § 1252(a)(2)(D); *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam). Nevertheless, we previously held that we lacked jurisdiction to review the determination that a crime was particularly serious for purposes of withholding of removal. *See Matsuk v. INS*, 247 F.3d 999, 1002 (9th Cir. 2001). We decided that we lacked jurisdiction over the question because § 1231 directs the Attorney General to "decide" whether there was a conviction for a particularly serious crime and § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [§§ 1151-1381] to be in the discretion of the Attorney General

or the Secretary of Homeland Security."[8] We concluded that the Attorney General's decision was discretionary within the meaning of § 1252(a)(2)(B)(ii). Under *Matsuk*, we would be precluded from reaching Delgado's contention that the BIA improperly treated his DUI convictions as particularly serious crimes for purposes of his application for withholding of removal, but *Matsuk* is no longer good law.[9]

**[2]** The government concedes *Matsuk* must be overruled in light of the Supreme Court's recent decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010). *Kucana* explains that § 1252(a)(2)(B)(ii) "bar[s] court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." *Id.* at 837. Under *Kucana*, a provision is not "specified . . . to be in the discretion of the Attorney General" unless the statute explicitly refers to the discretion of the Attorney General. *See id.* at 836-37. The statute at issue here, § 1231(b)(3)(B)(ii), states that withholding of removal "does not apply . . . if the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime[,] is a danger to the community of the United States." This provision does not explicitly vest discretion in the Attorney General. Accordingly, as the government concedes, we have jurisdiction to review such determinations.[10] Because *Matsuk* held otherwise, we overrule it.

---

[8]In a later case, we held that the jurisdiction-stripping provision did not apply to the determination that a crime was particularly serious for purposes of asylum. *See Morales v. Gonzales*, 478 F.3d 972, 979-80 (9th Cir. 2007).

[9]The three-judge panel questioned *Matsuk* but felt constrained to follow it. *See Delgado II*, 563 F.3d at 871 n.12 (recognizing the dissent's "persuasive" criticism of *Matsuk*); *id.* at 874-75, 888-89 (Berzon, J., concurring in part and dissenting in part) (criticizing *Matsuk* and suggesting rehearing en banc to overrule it).

[10]This conclusion is in accord with the decisions of other circuits. *See Nethagani v. Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008); *Alaka v. Attorney Gen.*, 456 F.3d 88, 97-98, 101-02 (3d Cir. 2006).

## B.  Statutory Framework

We begin with a brief overview of the statutory framework. Congress established the statutory right of aliens to request asylum and withholding of removal to bring the United States refugee law into conformity with the 1967 United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, 19 U.S.T. 6223, T.I.A.S. No. 6577 (the Protocol), to which the United States acceded in 1968. *See Barapind v. Reno*, 225 F.3d 1100, 1106 (9th Cir. 2000). The Protocol incorporates the substantive provisions of Articles 2 through 34 of the United Nations Convention Relating to the Status of Refugees (the Convention), July 5, 1951, 189 U.N.T.S. 150. *See id.* (citing the Protocol, 19 U.S.T. at 6259, which reprints the Convention). Article 33 of the Convention, entitled "Prohibition of Expulsion or Return ('Refoulement')," provides that:

> 1. No Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.
>
> 2. The benefit of the present provision may not, however, be claimed by a refugee whom there are reasonable grounds for regarding as a danger to the security of the country in which he is, or who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of that country.

19 U.S.T. at 6276.

Our immigration laws reflect these principles by providing for two different forms of relief from removal — withholding of removal and asylum. *See In re S-M-J-*, 21 I. & N. Dec. 722, 723 (B.I.A. 1997) (en banc) ("Congress incorporated the

international obligation into domestic United States law when it enacted the withholding of deportation provision of the Refugee Act of 1980, prohibiting the refoulement of refugees. Going beyond the nonrefoulement provision, Congress also established asylum as a discretionary form of relief for those who could meet a lesser standard of proof." (citation omitted)), *disapproved of on other grounds by Ladha v. INS*, 215 F.3d 889 (9th Cir. 2000); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 427-29, 436 (1987).

### 1. *Withholding of Removal*

To qualify for withholding of removal, an applicant must show that his "life or freedom would be threatened" if he is returned to his homeland. *See* 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."). The alien must demonstrate "that it is more likely than not that he would be subject to persecution on one of the specified grounds." *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001) (internal quotation marks omitted). Withholding of removal is not discretionary: "[t]he Attorney General is not permitted to deport an alien to a country where his life or freedom would be threatened on account of one of the [ ] protected grounds." *Id.* (internal quotation marks omitted).

**[3]** Withholding, however, "does not apply to an alien . . . if the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime[,] is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii). The statute does not define "particularly serious crime," but does provide that certain aggravated felony convictions automatically fall within this category:

For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

*Id.* § 1231(b)(3)(B). As used in immigration law, "aggravated felony" is a term of art referring to the offenses enumerated under § 1101(a)(43).

### 2. *Asylum*

The Attorney General has discretion to grant asylum to any applicant who qualifies as a "refugee." *Id.* § 1158(b)(1). A refugee is "any person . . . who is unable or unwilling to return to" his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42).

**[4]** As in the case of withholding of removal, asylum relief does "not apply to an alien if the Attorney General determines that . . . the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." *Id.* § 1158(b)(2)(A)(ii). As with withholding, the statute does not define "particularly serious crime." But the statute provides that all aggravated felonies are particularly serious crimes and authorizes the Attorney General to designate additional crimes as particularly serious crimes by regulation:

(i) Conviction of aggravated felony

For purposes of clause (ii) of subparagraph (A), an alien who has been convicted of an aggravated fel-

ony shall be considered to have been convicted of a particularly serious crime.

(ii) Offenses

The Attorney General may designate by regulation offenses that will be considered to be a crime described in clause (ii) or (iii) of subparagraph (A).

*Id.* § 1158(b)(2)(B).

Having provided this brief overview of the statutory framework, we turn to Delgado's specific arguments.

## C. For Purposes of Withholding of Removal, Particularly Serious Crimes Are Not Limited to Statutorily Defined Aggravated Felonies[11]

[5] Delgado argues that the BIA was barred from treating his DUI convictions as particularly serious crimes for purposes of withholding of removal. Drawing inferences from § 1231(b)(3)(B), he contends that only aggravated felonies, statutorily defined by § 1101(a)(43), may be treated as particularly serious crimes. We reject this argument because it is contrary to the BIA's reasonable interpretation of § 1231 that "a particularly serious crime need not be an aggravated felony." *N-A-M- I*, 24 I. & N. Dec. at 337. Under *Chevron*, we owe deference to the BIA's interpretation.

The BIA's precedential decisions interpreting the Immigration and Naturalization Act are entitled to *Chevron* deference. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc). Under *Chevron*,

---

[11]Parts II.C and II.D of this opinion borrow substantially from Judge Canby's opinion. *See Delgado II*, 563 F.3d 863.

we determine whether "the intent of Congress is clear." If it is, both the court and the agency "must give effect to the unambiguously expressed intent of Congress." If the statute is "silent or ambiguous," however, we may not supply the interpretation of the statute we think best . . . , but must limit ourselves to asking "whether the agency's answer is based on a permissible construction of the statute."

*Id.* at 908 (internal citations omitted) (quoting *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984)). We therefore address whether § 1231 is ambiguous and, if so, whether the BIA's resolution of that ambiguity is reasonable.

### 1.   Section 1231(b)(3)(B) Is Ambiguous

We have little trouble concluding that § 1231 is ambiguous. As noted, the last paragraph in § 1231(b)(3)(B) provides:

> For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

8 U.S.C. § 1231(b)(3)(B). This provision, and the second sentence in particular, could be understood to mean that only aggravated felonies can be particularly serious crimes. *See Alaka v. Attorney Gen.*, 456 F.3d 88, 105 (3d Cir. 2006) (holding that "an offense must be an aggravated felony in order to be classified as a 'particularly serious crime' " because the second sentence is "clearly tied to the first"). But an alternative construction is at least as reasonable — the second sentence may mean that any crime potentially can be par-

ticularly serious regardless of the sentence imposed. *See N-A-M- I*, 24 I. & N. Dec. at 338 (adopting the reasoning of *Ali v. Achim*, 468 F.3d 462, 470 (7th Cir. 2006), which held that § 1231(b)(3)(B) "does not imply that only aggravated felonies can qualify as 'particularly serious' crimes"). Other circuits have found the statute ambiguous, *see Gao v. Holder*, 595 F.3d 549, 554 (4th Cir. 2010); *N-A-M- v. Holder* (*N-A-M- II*), 587 F.3d 1052, 1056 (10th Cir. 2009); *Nethagani v. Mukasey*, 532 F.3d 150, 156-57 (2d Cir. 2008), and we agree. We must therefore decide whether the BIA's interpretation is based on a permissible construction of the statute.

### 2. *The BIA's Interpretation Is Permissible*

**[6]** The BIA agreed with the Seventh Circuit that the "designation of aggravated felonies producing sentences of at least five years' imprisonment as per se 'particularly serious' creates no presumption that the Attorney General may not exercise discretion on a case-by-case basis to decide that other nonaggravated-felony crimes are also 'particularly serious.' " *N-A-M- I*, 24 I. & N. Dec. at 338 (quoting *Ali*, 468 F.3d at 470) (internal quotation marks omitted). The BIA rejected the Third Circuit's conclusion that the second sentence in the last paragraph in § 1231(b)(3)(B) implies that particularly serious crimes are limited to the universe of aggravated felonies. *See id.* at 341. According to the BIA, "[t]hat sentence means only that aggravated felonies for which sentences of less than 5 years' imprisonment were imposed may be found to be 'particularly serious crimes,' not that *only* aggravated felonies may be found to be such crimes." *Id.* The BIA noted that its "consistent practice in numerous decisions over the course of the years has reflected an understanding that the classification of an offense as a 'particularly serious crime' is not limited to offenses that are aggravated felonies." *Id.* at 338-39. The BIA also emphasized that its interpretation is "supported by the history and background of the particularly serious crime provision." *Id.* at 339.

**[7]** We agree with those courts to have considered the question that the BIA's construction of the statute is a permissible one under *Chevron. See Gao*, 595 F.3d at 554-55; *N-A-M- II*, 587 F.3d at 1055-56; *Nethagani*, 532 F.3d at 156-57.[12] The BIA's interpretation of the statutory language is reasonable. The statute includes no express requirement that the Attorney General consider particularly serious crimes as a subset of aggravated felonies. Furthermore, as the BIA emphasized, its interpretation is supported by the statutory history of the particularly serious crime bar.

Congress first adopted a "particularly serious crime" bar to withholding of removal in 1980. *See* Refugee Act of 1980, Pub. L. No. 96-212, § 203(e), 94 Stat. 102, 107 (formerly codified at § 1253(h)(2)(B)). Under this provision, the BIA applied the case-by-case balancing test of *In re Frentescu*, 18 I. & N. Dec. 244 (B.I.A. 1982), to define particularly serious crimes. *Frentescu*'s test did not take into account whether the crime at issue had been statutorily defined as an aggravated felony. But over time, the BIA denominated some crimes as inherently particularly serious, so that individual determinations with regard to those crimes were not necessary. *See, e.g., In re Garcia-Garrocho*, 19 I. & N. Dec. 423, 425-26

---

[12]Delgado and amici argue that we need not defer to the BIA because it relied on a "plain text" reading of § 1231, a statute we have just found ambiguous. But the BIA did not rely on plain text alone: As we explained above, the BIA acknowledged the ambiguity and exercised its discretion to interpret the statute. *Chevron* requires us to defer to the BIA so long as *N-A-M- I* is "a permissible construction of the statute." *Marmolejo-Campos*, 558 F.3d at 908 (quoting *Chevron*, 467 U.S. at 843) (internal quotation marks omitted). Even if the BIA had relied solely on the text of § 1231, we would not be able to adopt Delgado's preferred interpretation. "[I]f an agency erroneously contends that Congress' intent has been clearly expressed and has rested on that ground, we remand to require the agency to consider the question afresh in light of the ambiguity we see." *Negusie v. Holder*, 129 S. Ct. 1159, 1167 (2009) (quoting *Cajun Elec. Power Coop., Inc. v. FERC*, 924 F.2d 1132, 1136 (D.C. Cir. 1991)) (internal quotation marks omitted).

(B.I.A. 1986) (defining first-degree burglary as per se particularly serious).

Congress then amended three times the "particularly serious crime" bar applicable to withholding of removal. Congress created and modified a category of per se particularly serious crimes, in part ratifying the BIA's newer approach of specifying per se particularly serious crimes. *See Miguel-Miguel v. Gonzales*, 500 F.3d 941, 945-46 (9th Cir. 2007). The Immigration Act of 1990 (the 1990 Act) made all crimes defined as aggravated felonies also particularly serious crimes. *See* Pub. L. No. 101-649, § 515(a)(2), 104 Stat. 4978, 5053 (1990) (formerly codified at § 1253(h)(2)(B)). Nothing in the text or history of the 1990 Act suggests that Congress intended, by making aggravated felonies per se particularly serious crimes, to divest the Attorney General of authority to determine on a case-by-case basis that other crimes are particularly serious. *See N-A-M- II*, 587 F.3d at 1056. Notwithstanding the 1990 Act, the agency continued to adjudicate particularly serious crimes on a case-by-case basis. *See In re B-*, 20 I. & N. Dec. 427, 430-31 (B.I.A. 1991).

Congress relaxed the 1990 Act's categorical approach in 1996 by passing § 413(f) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 413(f), 110 Stat. 1214, 1269 (formerly codified at § 1253(h)(3)(B)). AEDPA amended the "particularly serious crime" bar to allow the Attorney General to override the per se rule for aggravated felonies when "necessary to ensure compliance with the 1967 United Nations Protocol Relating to the Status of Refugees." *Id.* Congress again relaxed the categorical bar when it passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, div. C, § 305(a)(3), 110 Stat. 3009-546, 3009-602 (codified at § 1231(b)(3)(B)). IIRIRA enacted the provision at issue here, which categorically bars aggravated felons sentenced to five years or more imprisonment. *See* 8 U.S.C. § 1231(b)(3)(B).

The sparse legislative history of IIRIRA suggests one purpose of this enactment was to prevent violations of the Protocol. As noted earlier, the Protocol includes a non-refoulement provision prohibiting the expulsion or return of certain aliens. *See* 19 U.S.T. at 6276. As the list of aggravated felonies expanded during the 1990s, the per se rule for particularly serious crimes created tension with the Protocol by sweeping in some "fairly minor offenses." *In re Q-T-M-T-*, 21 I. & N. Dec. 639, 648 & n.4 (B.I.A. 1996) (quoting Immigration Control and Financial Responsibility Act of 1996: Mark-up on S. 1664 before the S. Comm. on the Judiciary, 104th Cong., 2d sess. 60-61 (1996) (remarks of Sen. Kennedy)) (internal quotation marks omitted); *see also Choeum v. INS*, 129 F.3d 29, 42-44 (1st Cir. 1997) (accepting the INS's argument that the 1996 IIRIRA amendments were motivated by expansion of the list of aggravated felonies). But nothing in the legislative history indicates that Congress intended, by creating a categorical bar and by later relaxing that categorical bar, to eliminate the Attorney General's pre-existing authority to determine that, under the circumstances presented by an individual case, a crime was "particularly serious," whether or not the crime was an aggravated felony.[13]

**[8]** We therefore hold that, for purposes of withholding of removal, an offense need not be an aggravated felony to be a particularly serious crime. The BIA thus had authority to determine whether Delgado's DUI convictions were particularly serious crimes, barring him from withholding of removal under § 1231(b)(3)(B).[14]

---

[13]Just as the 1996 amendments appear to recognize that some aggravated felonies are not particularly serious crimes, so too does it appear that some particularly serious crimes are not statutorily defined as aggravated felonies. Possession of a biological weapon, for example, is a very serious offense, but is not enumerated as an aggravated felony under § 1101(a)(43). *See Gao*, 595 F.3d at 555.

[14]If Delgado is ineligible for withholding of removal because he has been convicted of a particularly serious crime under § 1231(b)(3)(B), he is also ineligible for CAT withholding. *See* 8 C.F.R. § 1208.16(d)(2).

### D. For Purposes of Asylum, Particularly Serious Crimes Are Not Limited to Offenses Designated by the Attorney General by Regulation

**[9]** Delgado next argues that the BIA lacked authority to designate his DUI convictions as particularly serious crimes for purpose of his asylum application. He contends that, for purposes of asylum, particularly serious crimes include only aggravated felonies and such additional offenses as are designated particularly serious crimes by the Attorney General through regulation. DUI is not an aggravated felony and has not been designated by regulation as a particularly serious crime. Delgado thus disputes the BIA's authority to determine through adjudication that his DUI convictions were particularly serious crimes. We reject his contention and hold that the Attorney General — or the BIA, the Attorney General's delegate — can designate a specific offense as a particularly serious crime through case-by-case adjudication.

As we have said, asylum relief does "not apply to an alien if the Attorney General determines that . . . the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii). The statute does not define "particularly serious crime," but provides that aggravated felonies are particularly serious crimes and authorizes the Attorney General to designate additional crimes as particularly serious crimes by regulation:

(i) Conviction of aggravated felony

For purposes of clause (ii) of subparagraph (A), an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime.

(ii) Offenses

> The Attorney General may designate by regulation offenses that will be considered to be a crime described in clause (ii) or (iii) of subparagraph (A).

*Id.* § 1158(b)(2)(B). There is little question that this latter provision permits the Attorney General, by *regulation*, to make particular crimes categorically particularly serious even though they are not aggravated felonies. *See Gao*, 595 F.3d at 556. The question here is whether the Attorney General may also determine by *adjudication* that an individual immigrant's crime was particularly serious.[15]

**[10]** Because the history of the withholding and asylum statutes are similar, our conclusion as to the withholding statute is instructive. Although Congress has amended the asylum statute's particularly serious crime bar over time, none of its actions have called into question the BIA's authority to designate offenses as particularly serious crimes through case-by-case adjudication. The BIA historically made the determination whether an alien's crime was particularly serious for purposes of asylum strictly by adjudication, applying the

---

[15]Unlike in the withholding context, where we deferred to *N-A-M- I*, in the asylum context there is no precedential BIA decision addressing whether the Attorney General can designate particularly serious crimes by adjudication. The BIA's decision in the present case was itself not precedential, so we would owe it only *Skidmore* deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). But the BIA did not explicitly *interpret* its authority under the asylum statute so there is no reasoning to which we could defer. *See Vasquez v. Holder*, 602 F.3d 1003, 1012 n.8 (9th Cir. 2010) (holding that *Skidmore* requires only "minimal deference" to a thinly reasoned decision)*; Miranda Alvarado v. Gonzales*, 449 F.3d 915, 924 n.6 (9th Cir. 2006) (holding that *Skidmore* deference did not apply to a "brief and conclusory decision"). Under *Skidmore*, "the measure of deference afforded to the agency varies 'depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *Marmolejo-Campos*, 558 F.3d at 909 (quoting *Skidmore*, 323 U.S. at 140). Our review of this question is therefore effectively de novo.

*Frentescu* standard. *See In re Frentescu*, 18 I. & N. Dec. at 247. Congress made aggravated felonies categorically particularly serious crimes in 1990. *See* 1990 Act, Pub. L. No. 101-649, § 515(a)(1), 104 Stat. at 5053 (formerly codified at § 1158(d)). In 1996, Congress added § 1158(b)(2)(B)(ii), which authorizes the Attorney General to "designate by regulation offenses that will be considered to be [particularly serious crimes]" for purposes of asylum. IIRIRA, Pub. L. No. 104-208, div. C, § 604(a), 110 Stat. at 3009-692.

Section 1158(b)(2)(B)(ii) authorizes the *categorical* designation of additional crimes as particularly serious through regulation, and is silent on case-by-case adjudication. *See Gao*, 595 F.3d at 556-57. Indeed, it would be difficult to designate by regulation crimes that will be "considered" to be particularly serious unless the designation is categorical for those crimes. The provision simply does not speak to the ability of the Attorney General to determine in an individual case that the circumstances of an alien's crime made that crime particularly serious. The statute does not require the Attorney General to anticipate every adjudication by promulgating a regulation covering each particular crime.

**[11]** We therefore hold, consistent with other circuits to have addressed the question, that the Attorney General has the authority to designate offenses as particularly serious crimes through case-by-case adjudication of individual asylum applications. *See id.* at 557; *Ali*, 468 F.3d at 469.[16] The BIA thus

---

[16]It is true that our reading makes § 1158(b)(2)(B)(ii) a "belt and suspenders" approach to denying asylum, but that outcome is inevitable. Under our reading, the statute confirms that the Attorney General can deny relief on a case-by-case basis because of criminal history or through an exercise of discretion under § 1158(b)(1)(A), which provides that "the Attorney General *may* grant asylum" (emphasis added). But were the statute read to mean that the Attorney General could rely on regulation alone to designate classes of aliens as ineligible, that too would be redundant because § 1103(g)(2) already directs the Attorney General to "establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section."

was permitted to determine whether Delgado's DUI offenses were particularly serious through adjudication.

### E.   The BIA's Determination that Delgado Was Convicted of a Particularly Serious Crime

[12] Having settled questions of jurisdiction and the scope of the BIA's authority, the remaining question is whether the BIA properly determined that Delgado was convicted of a particularly serious crime, and thus barred from eligibility for asylum, *see* 8 U.S.C. § 1158(b)(2)(A)(ii), and withholding of removal, *see id.* § 1231(b)(3)(B)(ii).

The BIA articulated "[t]he applicable legal standard for determining whether the alien has committed a particularly serious crime" in *Frentescu*, 18 I. & N. Dec. at 247. *Anaya-Ortiz v. Holder*, 594 F.3d 673, 679 (9th Cir. 2010). *Frentescu* requires consideration of certain factors: "the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *In re Frentescu*, 18 I. & N. Dec. at 247. In short, a crime is particularly serious if the nature of the conviction, the underlying facts and circumstances and the sentence imposed justify the presumption that the convicted immigrant is a danger to the community. *See In re Carballe*, 19 I. & N. at 360 ("It must be determined that an applicant for relief constitutes a danger to the community of the United States to come within the purview of the particularly serious crime bar."); *see also N-A-M- I*, 24 I. & N. Dec. at 342 (describing the BIA's method of applying the *Frentescu* factors).[17]

---

[17]We have upheld the BIA's interpretation of this statute to require only the factual finding of conviction of a particularly serious crime to support the determination of danger to the community. *See Ramirez-Ramos v. INS*, 814 F.2d 1394, 1397 (9th Cir. 1987). The United Nations High Commissioner for Refugees (UNHRC) argued in an amicus brief submitted before

**[13]** The BIA's decisionmaking is governed by minimum procedural requirements. As relevant here, the BIA must provide "a reasoned explanation for its actions." *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005). "Due process and this court's precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument." *Su Hwa She v. Holder*, 629 F.3d 958, 963 (9th Cir. 2010). The BIA must be clear enough that we need not "speculate based on an incomplete analysis." *Id.* at 964; *see also Eneh v. Holder*, 601 F.3d 943, 947 (9th Cir. 2010).

In Delgado's case, the BIA explained only that:

> Based on the record before us, we agree with the Immigration Judge that the respondent is subject to removal from the United States based on . . . his record of convictions which rise to the level of being a particular[ly] serious crime (Exh. 2).

**[14]** We cannot tell from this scant analysis which of Delgado's crimes the BIA considered particularly serious or what led the Board to find his crime particularly serious. The BIA may have determined that one or more of Delgado's three DUI convictions *individually* rises to the level of a particularly serious crime. Alternatively, the BIA may have determined that Delgado's three convictions, when viewed *cumulatively*, rise to the level of a particularly serious crime. Or the BIA may have determined that one of the convictions — presumably the third — rises to the level of a particularly serious crime *in light of* Delgado's two earlier convictions. Moreover, the ambiguity that precludes us from understand-

rehearing en banc that the BIA's precedent violates the 1967 Protocol Relating to the Status of Refugees and the 1951 Convention Relating to the Status of Refugees. Delgado did not adopt the UNHRC's argument or brief his own argument for overturning *Ramirez-Ramos*. We therefore do not address that issue.

ing the BIA's reasoning also prevents us from discerning the extent to which the BIA agreed with and is supported by the IJ's analysis, assuming the BIA intended to adopt the IJ's reasoning.[18] Without knowing the basis of the Board's decision, we cannot conduct a meaningful review. We therefore remand to the BIA for a clear explanation. *See Su Hwa She*, 629 F.3d at 963-64; *Eneh*, 601 F.3d at 947.

## F. Delgado's CAT Deferral Claim

We have jurisdiction pursuant to § 1252(a) to review the BIA's denial of Delgado's claim for CAT deferral. *See Morales v. Gonzales*, 478 F.3d 972, 976 (9th Cir. 2007). We review for substantial evidence. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003). To obtain relief, Delgado was required to prove that "more likely than not, [ ]he will be tortured at the instigation of, or with the acquiescence of the [Salvadoran] government." *Silaya v. Mukasey*, 524 F.3d 1066, 1073 (9th Cir. 2008); *see also* 8 C.F.R. § 1208.17(a).

**[15]** The agency's conclusion that Delgado failed to meet his burden is supported by substantial evidence. The evidence does not compel the conclusion that Delgado will be tortured

---

[18]We cannot ascertain which of the IJ's rationales the BIA intended to adopt, if any. Thus, the ambiguity in the BIA's decision cannot be resolved by consulting the IJ's decision. As a threshold matter, we may look to an IJ's decision only if the BIA reviewed the IJ's decision for an abuse of discretion, *see de Leon-Barrios v. INS*, 116 F.3d 391, 393 (9th Cir. 1997), the BIA incorporated portions of the IJ's decision into its analysis, *see Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002), or the circumstances indicate that the IJ's decision serves as "a guide to what lay behind the BIA's conclusion," *Avetova-Elisseva v. INS*, 213 F.3d 1192, 1197 (9th Cir. 2000). None of those preconditions is satisfied here. Although the BIA indicated that it "agree[d] with the Immigration Judge," the IJ relied on two independent bases for its ruling: (1) each of the three DUI convictions "individually rises to the level of being a particularly serious crime" and (2) the three DUIs "are particularly serious crimes when looked at cumulatively." The BIA's decision is unclear about which of the IJ's alternative rationales it intended to adopt.

by the Salvadoran government. *See Sinha v. Holder*, 564 F.3d 1015, 1026 (9th Cir. 2009) (defining "torture," citing 8 C.F.R. § 1208.18(a)(1)). The record reflects that conditions in El Salvador have improved, and the political violence that led to the murder of Delgado's parents has ended. Although we believe Delgado when he says that it will be like torture for him to return to the country where his parents were murdered, that is not a harm inflicted "at the instigation of or with the consent or acquiescence of" the current Salvadoran government. 8 C.F.R. § 1208.18(a)(1). CAT relief is therefore unavailable.

**PETITION GRANTED IN PART AND DENIED IN PART AND CASE REMANDED.** Each party shall bear its own costs.

---

REINHARDT, Circuit Judge, concurring in part and concurring in the judgment:

I join parts I, II.A, II.B, II.E, and II.F of the majority opinion. I also agree with most of parts II.C and II.D.[1] I write separately in order to explain why I believe that the BIA should hold on remand that Delgado's DUI convictions were *not* particularly serious crimes.

It may help to put matters in perspective if I first explain

---

[1]I agree with the holding of each section. With respect to part II.C, I agree "that, for purposes of withholding of removal, an offense need not be an aggravated felony to be a particularly serious crime." Op. at 11076. I do so even though the statutes provide that certain aggravated felonies *per se* fall in that category of offenses. With respect to part II.D, I recognize "that the Attorney General has the authority to designate offenses as particularly serious crimes through case-by-case adjudication of individual asylum applications," Op. at 11079, but believe that this authority applies principally to the *categorical* classification of offenses as particularly serious, rather than to the classification of *individual* criminal acts as particularly serious.

the consequences of determining that a given offense constitutes a particularly serious crime. Not only does such a determination override the universal rule concerning refugees—that an alien who faces persecution or even death will not be returned to the land controlled by his persecutors—but it strips the Attorney General of all discretion to determine whether, considering all the circumstances, the individual who has committed an offense should be permitted to remain in this country. If an alien's offense is deemed particularly serious, the Attorney General loses his ability to consider a host of relevant discretionary factors: whether the alien has served in our Armed Forces, whether he has been gainfully employed and for how long, whether he has paid his taxes, whether he is the sole support of his American wife and children, and whether any members of his American family are ill or in need of medical care that they would be unable to obtain if he is removed to a foreign land. The "particularly serious crime" determination is thus a total bar to asylum and withholding of removal, regardless of how overwhelming the equities that favor an alien's remaining with his citizen family in this country. The INA reserves such severe consequences for those criminal offenses that make an alien so "danger[ous] to the community of the United States" that we are not willing to keep him here, notwithstanding the persecution he may face at home. In my opinion, these consequences should not be imposed on the basis of a DUI conviction.

## I

As the BIA itself held in *Matter of Frentescu*, "a 'particularly serious crime' is more serious than a serious nonpolitical crime.' " 18 I. & N. Dec. 244, 245 (BIA 1982), *superseded on other grounds by statute*, 8 U.S.C. § 1253(h) (1991), *as recognized in Miguel-Miguel v. Gonzales*, 500 F.3d 941, 946 (9th Cir. 2007). To state what would be obvious even apart from the BIA's having said so, a particularly serious crime must be one that is *more* than serious—one that stands clearly apart

from the broader category of "serious" crimes.[2] A list of those crimes that the statutes make *per se* "particularly serious" (by virtue of their status as aggravated felonies) gives some indication of the types of offenses that stand apart in their seriousness: "murder, rape, or sexual abuse of a minor," child pornography offenses, treason, the disclosure of national defense information, or RICO offenses.[3] *See* 8 U.S.C. § 1101(a)(43) (enumerating aggravated felonies).[4]

The agency's past precedential decisions also help to illuminate the definition of a "particularly serious crime." Crimes that the Attorney General has determined to be "particularly serious" as a categorical matter, regardless of the circum-

---

[2]Were I interpreting this statute in the first instance, in light of the provision's international provenance I would hold that a conviction of a particularly serious crime is necessary but not sufficient to trigger the bar to relief. I would read the statute to say that the Attorney General must separately determine that "the alien . . . constitutes a danger to the community of the United States" in order to send him home to face persecution. This interpretation of the statute's plain text, which appears to me to be the most natural one, is most consistent with the intent of the 1951 Refugee Convention and has been adopted by other countries in interpreting identical provisions of their refugee laws, as the amicus brief of the U.N. High Commissioner for Refugees explains. *See, e.g., In re Tamayo and Department of Immigration*, (1994) 37 A.L.D. 786 (Austl.); *Pushpanathan v. Canada* (*Minister of Citizenship and Immigration*), [1998] 1 S.C.R. 982, 999 (Can.); *see also* Paul Weis, *The Refugee Convention, 1951: The Travaux Préparatoires Analyzed with a Commentary* 342 (1995). Our court, the BIA, and every other circuit to consider the issue have rejected that interpretation, however. *See Ramirez-Ramos v. INS*, 814 F.2d 1394, 1397 (9th Cir. 1987); *Matter of Carballe*, 19 I. & N. Dec. 357 (BIA 1986); *see also, e.g., Kofa v. INS*, 60 F.3d 1084, 1088 (4th Cir. 1995) (en banc).

[3]For withholding of removal, such offenses are only *per se* "particularly serious crimes" if the alien was sentenced to at least five years of imprisonment. 8 U.S.C. § 1231(b)(3)(B) (hanging paragraph).

[4]As I have said, I agree with the majority's holding that the Attorney General may determine through case-by-case adjudication that crimes other than aggravated felonies are particularly serious. The list nevertheless illustrates the *types* of crimes that are serious enough to order an individual removed to his homeland to face persecution or death.

stances of an individual conviction, include felony menacing (by threatening with a deadly weapon),[5] armed robbery,[6] and burglary of a dwelling (during which the offender is armed with a deadly weapon or causes injury to another).[7] Common to these crimes is the intentional use or threatened use of force, the implication being that the perpetrator is a violent person.

Driving under the influence has little in common with these sorts of crimes. It has not been specially targeted through federal legislation, nor is it mentioned elsewhere in the immigration laws, nor does it involve violence. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) ("The ordinary meaning of ['crime of violence'] . . . suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses."). A DUI, while deemed worthy of punishment, is more a run-of-the-mill offense than a particularly serious one. American voters would be unlikely to elect a president or vice president who had committed a particularly serious crime, yet they had no difficulty in recently electing to each office a candidate with a DUI record. If the BIA is to hold that a DUI conviction qualifies as a particularly serious crime, then it must clearly explain this anomaly.

The BIA should also explain how it can consider a DUI conviction to qualify as a particularly serious crime, when it does not consider even a recidivist DUI offense to be a "crime involving moral turpitude." *Matter of Torres-Varela*, 23 I. & N. Dec. 78 (BIA 2001).[8] The BIA's determination that this

---

[5]*Matter of N-A-M-*, 24 I. & N. Dec. 336, 343 (BIA 2007).

[6]*Matter of Carballe*, 19 I. & N. Dec. 357, 360-61 (BIA 1986).

[7]*Matter of Garcia-Garrocho*, 19 I. & N. Dec. 423, 425-26 (BIA 1986).

[8]In *Matter of Lopez-Meza*, 22 I. & N. Dec. 1188 (BIA 1999), the BIA held that a conviction under Arizona's aggravated DUI statute is a crime involving moral turpitude. That statute makes it a crime to drive under the influence while knowingly driving with a suspended license. *See* Ariz. Rev. Stat. § 28-1381(A)(1); *Marmolejo-Campos v. Holder*, 558 F.3d 903,

offense is "not necessarily a conviction for a crime involving moral turpitude should lead [it] to exercise great caution in designating such an offense as a particularly serious crime." *Matter of L-S-*, 22 I. & N. Dec. 645, 655 (BIA 1999). It is difficult to understand how the BIA could hold that a DUI conviction is a particularly serious crime, sufficient to send an alien home to face persecution and possible death, when it is not even a serious enough offense to render him removable in the first place—when it is neither an aggravated felony, nor a crime involving moral turpitude, nor any other kind of offense for which an alien may be deported.[9]

All the relevant indications—the statute's text, the purpose of the "particularly serious crime" bar, the BIA's own past applications of that bar, and common sense— should lead the BIA to hold on remand that a DUI conviction is not a particularly serious crime. I cannot imagine that when Congress added the "particularly serious crime" exception to our immi-

---

917 (9th Cir. 2009) (en banc). California separately criminalizes DUI and driving with a suspended license, and Delgado has admitted to one conviction of each offense in 2002. But the BIA's precedents make clear that the two convictions do not merge to become "a" crime involving moral turpitude, akin to a conviction under the Arizona statute. As the BIA has held, "[m]oral turpitude cannot be viewed to arise from some undefined synergism by which two offenses are combined to create a crime involving moral turpitude." *Matter of Short*, 20 I. & N. Dec. 136, 139 (BIA 1989); *see Marmolejo-Campos*, 558 F.3d at 918 (Bybee, J., concurring in part and dissenting in part).

[9]The Immigration and Nationality Act makes only a limited set of other types of criminal offenses grounds for an immigrant's removal. They include high-speed flight from an immigration checkpoint, INA § 237(a)(2)(A)(iv); failure to register as a sex offender, *id.* § 237(a)(2)(A)(v); controlled substance offenses, *id.* § 237(a)(2)(B); firearms offenses, *id.* § 237(a)(2)(C); national security offenses, *id.* § 237(a)(2)(D)(i-iii); misuse of travel documentation, *id.* § 237(a)(2)(D)(iv); importation of an alien for an immoral purpose, *id.*; domestic violence offenses, *id.* § 237(a)(2)(E); and trafficking, *id.* § 237(a)(2)(F). A DUI conviction falls into none of these categories.

gration law in the Refugee Act of 1980, "to bring United States refugee law into conformance with the 1967 United Nations Protocol Relating to the Status of Refugees," it envisioned that everyday offenses of this sort could be included within that term. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 436 (1987). I hope that when the BIA considers this question in a fully reasoned manner, it will agree.

## II

As the majority notes, one of the three possible readings of the BIA's cryptic order is that "the BIA may have determined that Delgado's three convictions, when viewed *cumulatively*, rise to the level of a particularly serious crime." Maj. Op. at 11081-82. Another is that "the BIA may have determined that one of the convictions — presumably the third — rises to the level of a particularly serious crime *in light of* Delgado's two earlier convictions." *Id.* at 11081. In my view, neither of these interpretations is legally available to the agency.[10]

The statutes provide no conceivable basis for the agency to consider the convictions' *cumulative* effect. The bar to relief applies if the Attorney General determines that "the alien, having been convicted by *a* final judgment of *a* particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii) (emphasis added); *see id.* § 1231(b)(3)(B)(ii) (virtually identical for withholding of removal). The statutes do not mention "a particularly long rap sheet," "a particularly egregious repeat offender," or "a particularly serious series of offenses." The singular article "a" could not make any clearer the singular

---

[10]Were I deciding the issue in the first instance, I would hold that the agency may define what crimes are particularly serious only on a categorical offense-by-offense basis, rather than treating individual convictions differently on the basis of their specific facts. Under current law, however, the agency does sometimes look to the individual conviction and its particular characteristics rather than merely to the type of crime. My view is that it should do so only sparingly.

nature of "a particularly serious crime": the agency must identify *one* offense of conviction that constitutes "a particularly serious crime" in order to relieve the Attorney General of the opportunity to exercise his discretion and to bar the alien's application for relief.

Indeed, the BIA has recognized as much in the closely related context of crimes involving moral turpitude. In *Matter of Torres-Varela*, it held "that multiple convictions for the same DUI offense, which individually is not a crime involving moral turpitude, do not, by themselves, aggregate into a conviction for a crime involving moral turpitude." 23 I. & N. Dec. at 86. "[N]onturpitudinous conduct," the BIA explained, "is not rendered turpitudinous through multiple convictions for the same offense." *Id.* Precisely the same is true here: if one conviction of a given offense does not constitute a particularly serious crime, then the offense does not become particularly serious through the aggregation of several convictions.

The fallacy in a holding that multiple convictions cumulatively amount to "a particularly serious crime" may be readily shown by an analogy. Suppose the chairman of a political party comments that one of its candidates, "having made a particularly offensive remark, constitutes a danger to the electoral fortunes of the party," and accordingly urges that the candidate be replaced with a different nominee. Anyone fluent in the English language would understand the chairman to have said that (1) among the set of all offensive remarks, there is a sub-class that may be defined as "particularly offensive"; (2) the candidate had made one such remark; and (3) this single act by the candidate threatened the party's chances of victory in the next election. No one would understand the chairman to have meant that the candidate had made an inappropriate remark on several occasions and that these remarks, taken together, had "risen to the level of being" *a* particularly offensive remark. It would not matter, under the rule announced by the chairman, whether the candidate had made an offensive remark one, four, or ten times. Unless the remark

that caused the chairman to seek the candidate's replacement were in fact *particularly* offensive, rather than only offensive, it would not fall under the chairman's rule.

It would be no less improper for the agency to determine that Delgado's third DUI conviction was particularly serious only in light of his two *prior* DUI convictions. Indeed, such a rationale would amount to the same as treating the three convictions cumulatively as particularly serious. Because the cumulative approach contravenes the statutory text, if the agency were to reason in a manner substantively identical to that approach, its interpretation of the statute would not qualify for deference under the *Chevron* framework. Although "[t]he BIA's interpretation of immigration laws is entitled to deference . . . , we are not obligated to accept an interpretation clearly contrary to the plain and sensible meaning of the statute." *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir. 2003); *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

The BIA's set of criteria for determining whether a given conviction is of a particularly serious crime makes clear that the relevant inquiry is limited to the events relating to that single conviction, not to the broader subject of an immigrant's history of criminality in general. "In judging the seriousness of a crime," the agency "look[s] to such factors as the nature *of the conviction*, the circumstances and underlying facts *of the conviction*, the type of sentence imposed, and, most importantly, whether the type and circumstances *of the crime* indicate that the alien will be a danger to the community." *Frentescu*, 18 I. & N. Dec. at 247 (emphasis added). Each of these factors relates solely to the *one conviction* that the agency is asked to classify as either a particularly serious crime or one that may be serious but not particularly serious. The agency can consider the "circumstances" of that conviction, but the phrase imposes its own limit: the relevant circumstances are those relating to *the conviction*, not to the alien's life history, his moral character, or his criminal record.

*See Matter of Carballe*, 19 I. & N. Dec. 357, 360 (BIA 1986) ("The focus [in applying the *Frentescu* factors] is on the crime that was committed.").

The circumstances of a DUI conviction might include such factors as the driver's blood alcohol level, the speed at which he was traveling when arrested, the road conditions at the time, or whether passengers were in the car.[11] But they do not include the driver's list of past convictions, regardless of what offenses it may include. Whether the driver has a prior DUI conviction is no more relevant than whether he has a prior conviction for murder or rape: none of those prior convictions relates to the seriousness of the particular crime that the agency is required to classify. As the Attorney General has explicitly held, "the fact that an alien has no prior convictions is irrelevant to the 'particularly serious crime' calculus.*" Matter of Y-L-, A-G-, & R-S-R-*, 23 I. & N. Dec. 270, 277 (AG 2002), *overruled on other grounds by Zheng v. Ashcroft*, 332 F.3d 1186 (9th Cir. 2003); *see also Matter of N-A-M-*, 24 I. & N. Dec. 336, 343 (BIA 2007) ("[O]ffender characteristics . . . do not diminish the gravity of a crime."). If an alien's *lack* of prior convictions is irrelevant to the "particularly serious crime" determination, then as a logical matter, it must equally be irrelevant that an alien *does* have prior convictions. As the BIA has emphasized, "the proper focus for determining whether a crime is particularly serious is on the nature of the crime and not the likelihood of future serious misconduct." *Id.*[12]

---

[11]They might also include whether the driver caused serious harm to any other person, but a DUI that caused such harm would ordinarily be charged not under a simple DUI statute, *e.g.*, Cal. Veh. Code § 23152, but as a more serious crime. *See, e.g.*, Cal. Penal Code § 191.5(b) (defining "[v]ehicular manslaughter while intoxicated"). Indeed, fatal DUIs may be and often are charged as second-degree murder. *Cf. People v. Watson*, 637 P.2d 279 (Cal. 1981). Delgado's first DUI conviction was under a separate statute for DUI causing bodily injury, Cal. Veh. Code § 23153(a).

[12]To the extent that the agency's "particularly serious crime" determinations may sometimes have taken into account an alien's prior criminal his-

In short, two of the three grounds on which the majority suggests that the agency's conclusion may have been based would violate the statute's dictates. The third basis is that a single act of drunk driving may have constituted a particularly serious crime. As to this possibility, as I have indicated in part I, I strongly doubt that the "particularly serious crime" provision was intended to encompass a single conviction for drunk driving.

### III

"Drunk driving is a nationwide problem, as evidenced by the efforts of legislatures to prohibit such conduct and impose appropriate penalties. But this fact does not warrant our shoehorning it into statutory sections where it does not fit." *Leocal*, 543 U.S. at 13. Simple drunk driving has no place in a statutory exception limited to crimes so serious that they require the government to deport refugees to face likely persecution without consideration of the merits of their claims. No single conviction for such an offense can constitute a particularly serious crime, and the statute permits neither the aggregation of multiple convictions into a single particularly serious crime nor the determination that a single conviction is particularly serious in light of an alien's prior convictions.

To hold that Delgado has not committed a particularly serious crime would not necessarily allow him to remain in the country. It would mean only that the agency could *hear* his claim of persecution; he would still have to prove that he reasonably fears persecution on account of a protected ground upon his return to El Salvador. Even if he were found eligible

---

tory, or lack thereof, its actions can only be regarded as inconsistent with or overruled by the precedents cited above. *Compare Matter of L-S-*, 22 I. & N. Dec. 645, 656 (BIA 1999) ("The record demonstrates that this was his first offense.") *with Matter of Y-L-, A-G-, & R-S-R-*, 23 I. & N. Dec. at 277 ("[T]hat an alien has no prior convictions is irrelevant to the 'particularly serious crime' calculus.").

for asylum, the Attorney General would have the discretion to deny him that relief. *Cardoza-Fonseca*, 480 U.S. at 428 n.5.[13] At that point, the Attorney General could consider Delgado's criminal record, along with the equities in his favor and his likelihood of future persecution, in determining whether to grant him asylum. *See, e.g.*, *Kazlauskas v. INS*, 46 F.3d 902, 907 (9th Cir. 1995).

In my view, Delgado should have the opportunity to demonstrate his eligibility for relief and for the Attorney General's exercise of his discretion. I strongly doubt that the agency should pretermit that process by holding that a DUI conviction can condemn an alien to deportation into the hands of his potential persecutors.

---

[13]Only if Delgado could demonstrate a clear probability of persecution upon his return would the government be *obligated* not to deport him. *See Stevic*, 467 U.S. at 424.